Sandra A. Fisher, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

William Sharp, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Enrique Arabi, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Gunther Schneider, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Arturo LaRue, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*David Woodward,* with him *Robert F. Bensing, Peter Zurflieh, David Gates* and *Richard A. Katz,* for petitioners.

*Jean E. Graybill,* Assistant Counsel, with her *Catherine Stewart* and *Jason W. Manne,* Assistant Counsels, and *John Kane,* Acting Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, April 27, 1984:

We have consolidated for disposition the appeals of five general assistance claimants from separate orders of the Department of Public Welfare (Department) upholding a hearing examiner's decision to classify the claimant's as transitionally[1] needy. The

---

[1] 62 Pa. C. S. 432, *as amended,* 1982, April 8, P.L. 231, No. 75, §10, provides in part that "chronically needy or transitionally needy persons" shall be eligible for public assistance. Section 432(3)(i) (A-I) defines the class of chronically needy persons. Chronically

hearing officer's decision was made pursuant to Section 432(3)(i)(H) of the Public Welfare Code[2] (Code), and regulations pursuant thereto.[3]

The Code defines at Section 432(3)(i) nine categories of individuals who can be classified as chronically needy, and thus eligible for general assistance for an undetermined period. Claimants concede that they would only be eligible pursuant to Section 432 (3)(i)(H), which provides:

> (i) Chronically needy persons are those persons chronically in need who may be eligible for an indeterminate period . . . and shall be limited to:

> (H) Any person who has previously been employed full-time for at least 48 months out of the previous eight years *and has exhausted his or her unemployment compensation benefits prior to applying for assistance.* (Emphasis added.)

## I.

The first issue concerns the statutory construction of the phrase ". . . and has exhausted his or her unemployment compensation benefits prior to applying for assistance". Does Section 432(3)(i)(H) require an applicant for general assistance to first receive, then exhaust, unemployment compensation

---

needy persons shall receive assistance as long as the person remains eligible. Section 432(3)(iii) defines transitionally needy persons as "those persons who are otherwise eligible for general assistance but do not qualify as chronically needy. Assistance for transitionally needy persons shall be authorized only once in any twelve-month period in an amount not to exceed the amount of ninety days' assistance."

[2] Section 432 of the Public Welfare Code, *as amended*, 62 Pa. C. S. §432.

[3] Section 141.61(d)(k)(viii) of the Public Assistance Eligibility Manual (PAEM), 55 Pa. Code 141.61(d)(k)(viii).

benefits or will mere non-eligibility for unemployment compensation benefits suffice?

It is admitted by the Department that four out of the five claimants had the requisite 48 months of employment over the previous eight years. These four claimants were denied general assistance solely because they had not qualified[4] for unemployment benefits.

In dealing with questions of legislative intent, we are directed by the Statutory Construction Act of 1972 (Act),[5] to construe statutory words and phrases "according to the rules of grammar and according

---

[4] It is undisputed that Sandra Fisher worked 62 months out of the last 8 years, but she never earned wages sufficient to qualify her for unemployment compensation benefits. The last four months of work by Sandra Fisher occurred from May through September 1982, when she was employed under a CETA Program. The Unemployment Compensation Board of Review does not consider CETA wages as wages of employment, but as living expenses. It is further undisputed that Mrs. Fisher wishes to work and has never turned down a bona fide work offer.

The Department determined that Mr. Sharp was not entitled to be classified as "chronically needy" because he was not entitled to unemployment compensation benefits, due to his being fired from employment with just cause.

Gunther Schneider was classified as transitionally needy because he failed to qualify for unemployment compensation due to the fact that he was self-employed prior to being unemployed and such wages do not qualify a person for compensation.

The Department concedes that Mr. LaRue met the work requirement of 48 months out of the last eight years. Upon being terminated from his employment, Mr. LaRue received 4 unemployment compensation checks, then was removed from the unemployment rolls, because he had been fired with just cause. The Unemployment Compensation Board of Review considers the 4 checks which Mr. LaRue received as an overpayment that must be repaid. Thus, Mr. LaRue has never been entitled to unemployment compensation.

[5] Act of December 6, 1972, P.L. 1339, No. 290, §3, 1 P.S. §1901, et seq.

to their common or approved usage''. 1 Pa. C. S. §1903; *Campbell v. Workmen's Compensation Appeal Board (M. Glosser & Sons)*, 80 Pa. Commonwealth Ct. 148, 472 A.2d 272 (1984).

In the instant matter, we are confronted with the problem that the word "exhaust" is subject to two different interpretations. In conjunction with administrative law, *i.e.* exhaustion of administrative remedies, the term exhaustion does not require that a party have an administrative remedy as a precondition to access to the courts, but merely means that if an administrative remedy exists, the party must first use it. However, the Department maintains that you cannot exhaust something unless it was there to begin with.

This ambiguity is further reinforced by the fact that counsel for each side use the same quotes from the same legislative debates, by the same legislators, to reinforce their particular position. And, curiously enough, they are both correct. This further emphasizes the ambiguous nature of the phrase.

"When the words of the statute are not explicit, the intention of the general assembly may be ascertained by considering, among other matters . . . the contemporaneous legislative history." 1 Pa. C. S. §1921(c)(7). However, this Court has declared that "the records of individual legislators in debate are not relevant for the obvious reason that they represent only one person's view and not that of the opposing or enacting body." *Zemprelli v. Thornburgh*, 47 Pa. Commonwealth Ct. 43, 54, 407 A.2d 102, 109 (1979).

The legislative intent of the Code is defined at Section 401.[6] The Department claims that the stated

---

[6] Section 401 of the Public Welfare Code, 62 Pa. S. §401.

purpose of the Code establishes a "worthy man" concept. The only portion of Section 401 which could indicate such a purpose would be the following which states "that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society."

The Department argues that its interpretation of "exhaust" fulfills the above-stated legislative intent. It allegedly discourages those who have quit their employment or have been fired from being able to collect general assistance, even though they may have qualified for such assistance. To that extent, the Department's interpretation of the term "exhaust" does "encourage . . . self-dependency and the desire to be . . . useful to society".

However, the claimants have shown, and we concur, that the Department's interpretation also deprives those who are not "unworthy". It is undisputed that claimant, Sandra Fisher, had 62 months of employment over the previous eight years. Prior to applying for general assistance, however, Ms. Fisher was employed under a training program and such income did not qualify the claimant for unemployment compensation.

There is no basis on which Ms. Fisher can be classified as a person "unworthy" of general assistance. By working for 62 months out of the last eight years, she has demonstrated her "self-dependency and the desire to be a good citizen and useful to society". We are guided by principles of statutory construction which presume that the Legislature did not intend a result that is "absurd . . . or unreasonable". 1 Pa. C. S. §1922(1).

It is well settled that a court has no power to insert a word into a statutory provision when the Legis-

lature has failed to supply it. *Worley v. Augustine*, 310 Pa. Superior Ct. 178, 456 A.2d 558 (1983); *In Re: Township of Upper Chichester*, 52 Pa. Commonwealth Ct. 121, 415 A.2d 1250 (1980). The Department argues strongly that the Courts should not presume that the Legislature intended that which it declined to say; however, the Department actually maintains that by use of the term "exhausted", the Legislature meant "received and exhausted". If that is what the Legislature intended it is certainly familiar with the verb "receive" and could easily have utilized it.

We find that the Legislature did not intend that an applicant for general assistance, pursuant to Section 432(3)(i)(H) of the Code qualify for unemployment benefits as a prerequisite to entitlement for general assistance. The applicant need only exhaust such benefits should they be available.

## II.

As previously mentioned, one of the five consolidated cases centers upon whether or not the claimant, Enrique Arabi, had worked 48 months out of the last eight years, as required by Section 432(3)(i)(H).

Mr. Arabi is a native of Cuba, having arrived in the United States in May of 1980. Claimant's only verification of his work history was his own sworn affidavit. This detailed a work history which would meet the 48-month requirement in the Code if believed. Mr. Arabi could offer no supporting documentation of his work history. He states, and the Department concedes, that it is impossible for Mr. Arabi to get such independent verification from Cuba because he is an absent Cuban citizen who has defected to the United States. The Department introduced no evidence in contradiction to Mr. Arabi's affidavit.

Also, testifying in Mr. Arabi's behalf at the hearing was Mr. O. Frank DeGarcia, who is an expert on Cuban affairs. Mr. DeGarcia confirmed that it was impossible for Mr. Arabi to get verification of his employment from the Cuban government but Mr. DeGarcia also verified that the places where Mr. Arabi stated he had worked do, in fact, exist.

Section 141.61(d)(2)(viii),[7] defines the requirement that employment be verified for the purpose of determining the eligibility for "chronically needy" status. In citing the above section, the hearing officer determined that appellant did not verify a minimum of 48 months of employment. For those reasons, the hearing officer denied the appeal of Mr. Arabi. This decision was affirmed by the Secretary upon reconsideration.

Regulations controlling the verification process are found in Section 201.[8] These regulations define the procedure to be followed when it is impossible to secure valid substantiation of an eligibility criterion beyond the client's statement:

(iii) In certain situations, it may be impossible to secure valid substantiation beyond the statement of the applicant on certain eligibility factors. The worker will then make a reasonable decision based on his or her judgment of all the available evidence, that is, the credibility of the person, and the validity of other supporting or conflicting evidence.

The hearing officer made no determination as to Mr. Arabi's credibility. There was no conflicting evidence. According to Section 201, in the absence of

---

[7] Section 141.61(d)(1)(viii) of the Public Assistance Eligibility Manual (PAEM), 55 Pa. Code 141.61(d)(1)(viii).

[8] Section 201.4(a)(1)(iii) of the Public Assistance Eligibility Manual (PAEM), 55 Pa. Code 201.4(a)(1)(iii).

other supporting evidence, pro or con, the credibility of the applicant for assistance is the only issue in question. Because the hearing officer made no such determination this case is remanded for a factual determination on the issue of credibility.

## III.

There is one final issue presented concerning the timeliness of the appeal of Arturo LaRue.

The Department claims that Mr. LaRue did not timely raise the issue of his classification in September of 1982, as "transitionally needy", rather than "chronically needy". Mr. LaRue did not appeal his classification as "transitionally needy" within the 30 days, as is required by the Department. However, in late December of 1982, the Department sent a notice to Mr. LaRue, with the heading "Important—New Notice About General Assistance".[9] This notice states, "if you believe you are chronically needy, you may request a hearing on or before January 8, 1983".

---

[9] In pertinent part, this notice stated the following:

Dear Mr. LaRue:

In September or October we told you that you were transitionally, not chronically needy, and that your General Assistance would end sometime in December or January. This notice is to give you more information so that you can decide whether you now want to request a hearing.

You may be chronically needy and eligible for continuing assistance because:

I. You worked 30 hours a week for at least 48 months in the last 8 years and had no unemployment benefits left when you applied for assistance.

If you believe you are chronically needy, you may request a hearing on or before January 8, 1983. . . .

To request a hearing:

1. You must sign and complete the form below . . .

2. You must mail this form to the Office of Hearings and Appeals, P. O. Box 8326, Harrisburg, Pennsylvania 17105, by the date stated in this notice.

Mr. LaRue responded to this notice on the form supplied, which was on the back of the above-mentioned notice form. His reply to this notice is time-stamped December 30, 1982 by the Harrisburg office of the Department of Public Welfare. Thus, Mr. LaRue's response to this notice was timely made.

The Department contends that Mr. LaRue could have reapplied for "chronically needy" assistance when his "transitionally needy" benefits expired in December, and the issue of exhaustion of unemployment compensation benefits could have been properly raised then. But his eligibility for "chronically needy" benefits in December or January was not properly at issue in his January appeal hearing.

However, the Department's notice in December of 1982 to Mr. LaRue belies this contention. Mr. LaRue followed the instructions in their notice. We will not allow the Department to now state that they gave Mr. LaRue wrong instructions in December, unsolicited instructions at that, and thus allow them to defeat Mr. LaRue's subsequent appeal. Therefore, we rule that Mr. LaRue's appeal was timely filed.

### Order in 1100 C.D. 1983

And Now, this 27th day of April, 1984, the Order of the Acting Director, Office of Hearings and Appeals of the Department of Public Welfare in the above-referenced matter, No. 31635, dated March 24, 1983, is hereby reversed and remanded to the Department of Public Welfare for a computation of benefits. Jurisdiction relinquished.

### Order in 1374 C.D. 1983

And Now, this 27th day of April, 1984, the Order of the Executive Deputy Secretary of the Department of Public Welfare in the above-referenced matter, No. 0077370, dated April 27, 1983, is hereby re-

versed and remanded to the Department of Public Welfare for a computation of benefits.

Jurisdiction relinquished.

### ORDER IN 1908 C.D. 1983

AND Now, this 27th day of April, 1984, the Order of the Department of Public Welfare in the above-captioned matter is hereby reversed and remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

### ORDER IN 1990 C.D. 1983

AND Now, this 27th day of April, 1984, the Order of the Executive Deputy Secretary of the Department of Public Welfare in the above-referenced matter, No. 0901 2105, dated July 19, 1983, is hereby reversed and remanded to the Department of Public Welfare for a computation of benefits.

Jurisdiction relinquished.

### ORDER IN 1359 C.D. 1983

AND Now, this 27th day of April, 1984, the Order of the Executive Deputy Secretary of the Department of Public Welfare in the above-referenced matter, No. 94739, dated April 27, 1983, is hereby reversed and remanded to the Department of Public Welfare for a computation of benefits.

Jurisdiction relinquished.