501 A.2d 617

**Sandra A. FISHER, et al.,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.**

**Gregory MATIC**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 1985.

Decided Oct. 21, 1985.

Jean E. Graybill, Asst. Counsel, John A. Kane, Acting Chief Counsel, John P. Krill, Dep. Gen. Counsel, Harrisburg, for Com., Dept. of Public Welfare.

David Woodward, Harry S. Geller, Legal Services Inc., Chambersburg, for Sandra A. Fisher.

David Gates, Bucks County Legal Aid Society, Bristol, for Gunther Schneider.

Peter Zurflieh, Harrisburg, for Enrique Arabi.

Rebecca L. Peace, Blair County Legal Services Corp., Pittsburgh, for William Sharp.

Richard A. Katz, Central Pa. Legal Services, Lancaster, for Arturo LaRue.

Lorraine D. Taylor, Neighborhood Legal Service Assn., McKeesport, for Gregory Matic.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

PAPADAKOS, Justice.

Given the substantial public importance of the question involved in these consolidated appeals, and the scant and evenly divided authority existing thereon, we have deemed it appropriate to grant discretionary review. In this case of first impression, we are concerned, primarily, with a matter of statutory construction in which the intent of the Legislature is controlling. After evidence was presented before a hearing officer, all Appellees were granted general assistance benefits as transitionally needy persons.[1] This decision was upheld by the Department of Public Welfare. Timely notices of appeal were filed by each Appellee to Commonwealth Court requesting assistance as chronically needy persons[2] rather than transitionally needy persons.

---

1. Transitionally needy persons are defined as those persons who are otherwise eligible for general assistance but do not qualify as chronically needy. Assistance for transitionally needy persons shall be authorized only once in any twelve-month period in an amount not to exceed the amount of ninety days' assistance. 62 Pa.S. § 432(3)(iii).

2. Chronically needy persons are defined by the Legislature in 62 Pa.S. § 432(3)(i) which states:

Chronically needy persons are those persons chronically in need who may be eligible for an indeterminate period as a result of medical, social or related circumstances and shall be limited to:

After consolidation, Commonwealth Court reversed the orders of the Department of Public Welfare and remanded for computation of their general assistance benefits as chronically needy persons. *Fisher, et al, v. Commonwealth, Department of Public Welfare,* 82 Pa. Commonwealth Ct. 116, 475 A.2d 873 (1984). Subsequently, timely Petitions for Allowance of Appeal were filed and granted for Sandra Fisher, et al, on September 15, 1984, and for Gregory Matic on October 15, 1984. We now reverse Commonwealth Court.

The factual pattern of employment for each Appellee reveals that all five Appellees applied for unemployment compensation benefits and were denied for various reasons.

Appellee Fisher lacked adequate earnings in her base year to collect unemployment compensation benefits.[3] Appellees Sharp and La Rue [4] were ruled ineligible for unemployment compensation benefits as a result of being fired for willful misconduct.[5] Appellee Schneider was ineligible because he was self-employed.[6] Appellee Arabi lacked eligibility due to his employment record being outside the United States.[7] Appellee Matic was ineligible for unemployment compensation because he voluntarily quit his job with-

> (H) Any person who has previously been employed full time for at least forty-eight months out of the previous eight years and has exhausted his or her unemployment compensation benefits prior to applying for assistance.

3. 43 Pa.S. § 801.

4. Although the timeliness of Appellee La Rue's appeal had been previously questioned in Commonwealth Court, this issue has been resolved and is not before us on appeal.

5. 43 Pa.S. § 802 provides:
   Ineligibility for compensation:
   An employee shall be ineligible for compensation for any week—
   (e) In which his unemployment is due to discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act;...

6. 43 Pa.S. § 802(h).

7. Appellee Arabi does not seek review of that part of the decision which remanded for a finding of fact on the credibility of his witness.

out a compelling and necessitous reason.[8] Thus, each Appellee was properly found ineligible to receive *any* unemployment compensation benefits. Parenthetically, each Appellee enjoyed at least forty-eight months of full-time employment out of the previous eight years. After being denied unemployment compensation benefits, all Appellees applied for cash assistance benefits and were granted ninety days of general assistance benefits as transitionally needy persons because the Department of Public Welfare determined that they did not meet the criteria for chronically needy (year-round) benefits.

It is undisputed that all Appellees met the work requirement standard set forth in subsection (H), footnote 2, *id.*,[9] but the Department concluded that none had fulfilled the requirement that unemployment compensation benefits be exhausted. The Department of Public Welfare thus classified the Appellees as transitionally needy persons. This ruling was timely appealed by all Appellees to Commonwealth Court.

The sole issue raised by these appeals is Commonwealth Court's conclusion that persons who did not meet statutory requirements for eligibility for unemployment compensation benefits have "exhausted" their unemployment compensation benefits so as to meet the elements of the legislative definition of chronically needy persons. At issue is the meaning of the word "exhausted" as used in the Public Welfare Code.

Our interpretation of statutory language is governed by 1 Pa.C.S. § 1921, Act of December 6, 1972, P.L. 1339, No. 290, § 3, which states:

8.  43 Pa.S. § 802(b)(1).

9.  Appellee Arabi, a native of Cuba, having arrived in the United States in May of 1980, verified by his own sworn affidavit a work history in Cuba which met the forty-eight month requirement. No independent verification of such work history was furnished on the excuse of impossibility. In view of our holding, this issue is irrelevant since the foreign employment is not "covered" employment under the Act and any wages earned could not be considered in determining base year wages and rate of compensation. See 43 P.S. § 753(i) and (j), for definitions of employee and employer covered by the Act.

§ 1921. Legislative intent controls.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

Furthermore, when the statute's meaning is plain, we may not look to the legislative history when doing so would alter the plain meaning of the statute. *Hellertown Manufacturing Co. v. Commonwealth of Pennsylvania*, 480 Pa. 358, 390 A.2d 732 (1978).

The supreme principle of statutory interpretation must be that each word used by the Legislature has meaning and was used for a reason, not as mere surplusage. "The Legislature cannot be deemed to intend that its language be superfluous and without import." *Commonwealth v. Mack Bros. Motor Car Co.*, 359 Pa. 636, 640, 59 A.2d 923, 925 (1948). *See also, Daly v. Hemphill*, 411 Pa. 263, 273, 191 A.2d 835, 842 (1963).

General Assistance has been available to qualified Pennsylvania applicants since 1937 when the Public Assistance Law was originally enacted (Act of June 24, 1937, P.L. 2051,

§ 4). After numerous changes and refinements, the current Welfare Reform Act was enacted in 1982, Act of April 8, 1982, P.L. 231, No. 75, § 10. The Act is fashioned to tighten the eligibility standards for General Assistance cash payments by encouraging self-sufficiency for able-bodied workers and allocating funds to the most needy. The problem with Commonwealth Court's interpretation is that they are reading words into the Public Welfare Act rather than accepting the plain meaning of the statute.

Its conclusion that an "applicant need only exhaust such benefits should they be available" (page 174), basically is premised on the assumption that these Claimants should be allowed benefits because that is what the Welfare Reform Act was designed to do, and because "the Legislature did not intend a result that is absurd ... or unreasonable" (page 174).

■ By coupling a work history with the necessity of exhausting unemployment compensation benefits, the Legislature in clear language imposed a requirement that a claimant earn, apply for and receive unemployment compensation and use it all up as pre-conditions to qualifying as "chronically needy persons." Inherent in the term "exhaust" is the notion that before something can be exhausted, it first must have been available and, moreover, received to the fullest extent possible. That which does not exist cannot be consumed or used up or exhausted. Similarly, a claimant cannot receive extended benefits until regular benefits have been received and exhausted. *Nikolaidis v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 137, 398 A.2d 755 (1979).

■ In the instant case, we are urged to believe that the term "exhaust" can be subject to two interpretations, namely, that a claimant must either receive and use up unemployment compensation benefits, or simply apply for unemployment compensation and be denied. This latter interpretation is nothing more than an exhaustion of administrative procedures. It surely is not an exhaustion of benefits.

Because we read our statute and the legislative history behind it to impose stricter standards for claimants to receive benefits under the Act, we must conclude that the Legislature intended "exhaust" to mean the Appellees must have qualified for and received unemployment compensation benefits and depleted their entitlement to same in order to qualify for and receive general assistance benefits as chronically needy persons.

The entire legislative history of the Welfare Reform Act has been thoroughly reviewed by this Court. The key term "exhaust" has been discussed during legislative debate and each time the word appears, the conclusion is that unemployment benefits must have been "used up" in order to receive chronically needy benefits. The whole flavor of the Act is to tighten the reigns of spending by imposing strict requirements on claimants seeking general assistance payments and, in doing so, requiring all claimants to exhaust unemployment benefits pursuant to 62 Pa.S. § 432(3)(i)(H).

The decision of Commonwealth Court is reversed.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed.

ZAPPALA, J., filed a concurring opinion.

HUTCHINSON, J., concurs in the result.

NIX, C.J., and LARSEN, J., filed a dissenting opinion.

ZAPPALA, Justice, concurring.

I concur in the result. An infelicitous choice of words in the articulation of its reasoning lays the lead opinion open to criticism on peripheral points of dispute while obscuring the controlling issue.

The question in this case is whether the Appellees are eligible for general assistance benefits as chronically needy persons under 62 Pa.S. § 432(3)(i)(H). That section of the

Public Assistance Law defines as a chronically needy person

> Any person who has previously been employed full time for at least forty-eight months out of the previous eight years and has exhausted his or her unemployment compensation benefits prior to applying for assistance.

The Department of Public Welfare denied the Appellees' claims for general assistance benefits as chronically needy persons because for various reasons the Appellees either did not qualify for or were ineligible to receive unemployment compensation benefits. According to the Department such persons had not "exhausted [their] unemployment compensation benefits" and therefore did not come within the definition of "chronically needy person" set forth in 62 Pa.S. § 432(3)(i)(H).

In the appeal to Commonwealth Court challenging the Appellees' classification as transitionally needy persons, argument focused on the meaning of the word "exhausted". The Appellees argued, and Commonwealth Court held, that unemployment compensation benefits need not have been received and depleted in order for the exhaustion requirement to be met. Rather, the claimant need only have pursued whatever unemployment compensation benefits were available to him. If none were available, whether because of the claimant's failure to qualify for such benefits or because of a determination that he was ineligible for benefits, the exhaustion requirement would be satisfied.

Assuming that the meaning of the term "exhausted his or her unemployment compensation benefits" is sufficiently unclear as to require the court to engage in an inquiry to discern the intention of the General Assembly [1], the interpretation argued for by the Appellees and accepted by the

---

1. It is often futile to pursue the point that the meaning of a phrase is clear and unambiguous and therefore in no need of resort to legislative interpretation. Unless the alternative meaning offered is wholly irrational, the mere fact that an alternative meaning has been put forward moves the argument beyond this point. Intellectual energies are then best spent in demonstrating why the meaning which the proponent considered "clear and unambiguous" is the meaning that best comports with the legislative intent.

court below does not bear up under scrutiny. Initially, the Commonwealth Court attempts to reason by analogy. Thus it is said that "[i]n conjunction with administrative law, i.e. exhaustion of administrative remedies, the term exhaustion does not require that a party have an administrative remedy as a precondition to access to the courts, but merely means that if an administrative remedy exists, the party must first use it." 82 Pa.Cmwlth. at 120, 475 A.2d at 875. The parallel to be drawn in the present case is that in order to exhaust unemployment compensation benefits for purposes of this section, a claimant need not have been entitled to benefits, but merely have first used them if he were entitled to them. This is a false analogy.

Whereas a person who has not received unemployment benefits seeks to come within the definition of the word "exhaust", a party for whom there is no administrative remedy does not argue that he has "exhausted his administrative remedies" and therefore may proceed in court. He belongs in court in the first instance; "administrative remedies" and "exhaustion" are simply irrelevant to his case. Where no administrative remedies exist, it is absurd to say that a party may proceed in court *because* he has "exhausted his administrative remedies." The concept of exhaustion is utterly meaningless in such a context. The correct statement of the premise in the Commonwealth Court's reasoning is that "the doctrine of exhaustion of administrative remedies does not require that a party have an administrative remedy as a precondition to access to the courts, but merely means that if an administrative remedy exists, the party must first use it." As thus corrected, however, the premise offers no support for the argued meaning of the term "exhausted".

The Commonwealth Court further errs by setting up the general statement of the purpose of the Public Assistance Law as controlling in specific determinations of eligibility. Describing the statement of purpose contained in Section 401 of the Law, 62 Pa.S. § 401, as establishing a "worthy man" concept, the court concludes that the Appellees have

each in one way or another demonstrated that they are not "unworthy". Whether the Appellees or any other claimant might marshal evidence to convince this or any tribunal that in the abstract or by comparison they are "worthy" to receive benefits as chronically needy persons is of no legal significance. The legislature has done more than state that assistance is to be granted to "worthy" people, it has specifically defined those people whom it considers to be worthy. The court engages in this discussion of "worthiness" ostensibly in aid of ascertaining the proper interpretation of "exhausted", but the result is even further error. The court notes that each of the Appellees had by his work experience demonstrated "self-dependency and the desire to be a good citizen and useful to society." Subsection (H), under which the Appellees seek to qualify themselves as chronically needy, requires not only work experience of at least 48 months out of the last eight years, *but also* exhaustion of unemployment benefits. If the Appellees could demonstrate "worthiness" and therefore eligibility merely by producing evidence of a sufficient work record, the exhaustion language would be surplusage. "Every statute shall be construed, if possible, to give effect to all of its provisions." 1 Pa.C.S. § 1921(a). *See also Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963).

In this connection, the court also makes oblique reference to the rule of statutory construction that it may be presumed that "the General Assembly does not intend a result that is absurd ... or unreasonable." 1 Pa.C.S. § 1922(1). Having previously acknowledged that the Department's interpretation of the term "exhaust" serves to further the general purpose of the statute, however, the court cannot rationally conclude that the results of that interpretation, however harsh or distasteful to the court, are absurd or unreasonable.

Finally, the court errs in asserting that the Department's interpretation is tantamount to adding words which the Legislature could have, but did not use. Thus the court dismisses the department's argument, which it frames as

"that by use of the term 'exhausted' the Legislature meant 'received and exhausted' ", by stating that "[i]f that is what the Legislature intended it is certainly familiar with the verb 'receive' and could easily have utilized it." In effect, the court has lured the Department into defining a word which the Department was satisfied was clear on its face, and then sprung the trap when the Department uses other words to convey the same meaning. It does not require acute discernment to recognize the same "fault" in the court's conclusion that the Legislature intended "exhaust" to mean "exhaust if benefits should be available".

My agreement with the result reached in the lead opinion, though, is not simply based on confuting the rationale of the lower court. There are several strong reasons in support of the Department's interpretation of subsection (H).

Preliminarily, it must be made clear that the factors to be considered in ascertaining legislative intent, 1 Pa.C.S. § 1921(C), are to be applied in this case to provisions of the Welfare Reform Act, Act of April 8, 1982, P.L. 231, No. 75, § 10, which amended the Public Assistance Law, Act of June 24, 1937, P.L. 2051, § 4. Although both of these statutes are among those to be "liberally construed to effect their objects and to promote justice", 1 Pa.C.S. § 1928(c)[2], it cannot be ignored that the Reform Act significantly altered the eligibility requirements for general assistance payments. As described by the United States Court of Appeals for the Third Circuit,

> Under the previously applicable provision, all persons eligible to receive general assistance relief were entitled to payments for twelve months a year. Section 10, in contrast, establishes two categories of needy persons: the chronically needy and the transitionally needy. Only those deemed to be in the former group are eligible for year-round general assistance relief. Those classified as

**2.** Justice Larsen's dissent paraphrases this rule of construction as "the courts are *required* to construe its provisions liberally *in favor of coverage*", Dissenting Opinion at 6 (emphasis in original), belying a "fundamental philosophy" as "misguided" as that of which he accuses the plurality, See *id.*, at 181.

transitionally needy are limited to three months' general assistance payments in any twelve month period.

*Price v. Cohen,* 715 F.2d 87, 89 (3rd Cir.1983) (classifications not violative of equal protection). Considering the Reform Act in light of "the occasion and necessity" for it, "the circumstances under which it was enacted", "the mischief to be remedied", "the object to be attained", and "the former law ... upon the same or similar subjects", 1 Pa.C.S. § 1921(c)(1)–(5), subsection (H) must be construed as a limitation on eligibility *for year-round benefits.* I do not understand the lead opinion to be doing any more than this, although the language employed ("we read our statute and the legislative history behind it to impose stricter standards", "[t]he whole flavor of the Act is to tighten the reigns of spending by imposing strict requirements", at 620) readily gives rise to the misperception of Justice Larsen's dissent that the Act is being "strictly construed". In the case of a statute generally granting benefits, it might well be that in a doubtful case "liberal construction" of the statute would result in a decision in favor of coverage rather than denial of all benefits. In the case of an amendatory statute whose purpose is to limit full benefits to certain categories of recipients while allowing partial benefits to others, "liberal construction" does not mandate that doubtful cases be construed in favor of full coverage. Rather "liberal construction *to effect the purpose of the statute ...*" requires that limitations be construed as limitations, no more, no less.

Examining subsection (H) in the context of the entire list of limitations imposed on eligibility for year-round benefits, it is readily apparent that the General Assembly distinguished among several types of persons who were not receiving unemployment compensation benefits. Subsection (G) defines as chronically needy "[a]ny person who is *ineligible for unemployment compensation* and whose income falls below the assistance allowance level as a result of a natural disaster as determined by the department." 62 Pa.S. § 432(3)(i)(G) (emphasis added). Subsection (I), a transitional provision maintaining persons on the general assist-

ance rolls for a period of approximately six months after the effective date of the amendments, contains a clause prohibiting persons dropped from the rolls during those six months from requalifying under the transitional provision "except when such person has been terminated from employment through no fault of his own and *has not met the minimum credit week qualifications of the ... Unemployment Compensation Law.*" 62 Pa.S. § 432(3)(i)(I) (emphasis added). It is unmistakeable that the General Assembly recognizes as distinct categories those who are ineligible for unemployment benefits, those who have exhausted unemployment benefits, and those who do not meet the statutory qualifications for unemployment benefits. In the face of these clear distinctions, it borders on linguistic anarchy to assert that those who are ineligible to receive or do not qualify for unemployment compensation benefits can nevertheless be considered as having exhausted their benefits.

If further indication of the reasoning ascribed to the term "exhausted" by the Legislature were necessary, reference to the Unemployment Compensation Law itself should suffice to quell any lingering doubts. For purposes of the Extended Benefits Program, Act of Feb. 9, 1971, P.L. 1, No. 1 § 2, an "exhaustee" means "an individual who, with respect to any week of unemployment in his eligibility period: (1) has *received,* prior to such week, all of the regular benefits that were available to him ..." 43 P.S. § 811(h) (emphasis added).

Giving the Department's interpretation of the statute appropriate weight, reading the statute in conjunction with the related unemployment compensation law, examining the subsection in context of the entire statute, and finding the arguments in support of a contrary interpretation to be built on a series of demonstrably faulty premises, I cannot but conclude that this Court is correct in reversing the Order of the Commonwealth Court.

NIX, Chief Justice, dissenting.

I was opposed to the grant of allocatur in this matter, being satisfied that the issue was correctly decided by the

Commonwealth Court and that further explication was unnecessary. After studying the scholarly briefs submitted, the eloquent oral argument offered, and the expression of the views of my colleagues in support of reversal, my opinion remains unaltered.

I dissent.

LARSEN, Justice, dissenting.

I must vigorously dissent to the plurality's decision and reasoning in this case, particularly its application of a "strict construction" approach to the interpretation of the public assistance provisions of the Public Welfare Code. By engaging in dubious semantics, the plurality's interpretation of the Code has deprived many deserving claimants of benefits that the legislature surely intended them to have. I would affirm the Commonwealth Court's common sense and just decision on the basis of Judge Colins' opinion for the unanimous panel (Colins, Rogers and Craig, JJ.) which states, in relevant part:

> It is admitted by the Department that four out of the five claimants had the requisite 48 months of employment over the previous eight years. These four claimants were denied general assistance solely because they had not qualified for unemployment benefits.
>
> In dealing with questions of legislative intent, we are directed by the Statutory Construction Act of 1972 (Act), to construe statutory words and phrases "according to the rules of grammar and according to their common or approved usage". 1 Pa.C.S. § 1903; *Campbell v. Workmen's Compensation Appeal Board (M. Glosser & Sons)*, [80] Pa.Commonwealth Ct. [148], 472 A.2d 272 (1984).
>
> In the instant matter, we are confronted with the problem that the word "exhaust" is subject to two different interpretations. In conjunction with administrative law, i.e. exhaustion of administrative remedies, the term exhaustion does not require that a party have an adminis-

trative remedy as a precondition to access to the courts, but merely means that if an administrative remedy exists, the party must first use it. However, the Department maintains that you cannot exhaust something unless it was there to begin with.

This ambiguity is further reinforced by the fact that counsel for each side use the same quotes from the same legislative debates, by the same legislators, to reinforce their particular position. And, curiously enough, they are both correct. This further emphasizes the ambiguous nature of the phrase.

"When the words of the statute are not explicit, the intention of the general assembly may be ascertained by considering, among other matters ... the contemporaneous legislative history." 1 Pa.C.S. § 1921(c)(7). However, this Court has declared that "the records of individual legislators in debate are not relevant for the obvious reason that they represent only one person's view and not that of the opposing or enacting body." *Zemprelli v. Thornburgh,* 47 Pa.Commonwealth Ct. 43, 54, 407 A.2d 102, 109 (1979).

The legislative intent of the Code is defined at Section 401. The Department claims that the stated purpose of the Code establishes a "worthy man" concept. The only portion of Section 401 which could indicate such a purpose would be the following which states "that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society."

The Department argues that its interpretation of "exhaust" fulfills the above-stated legislative intent. It allegedly discourages those who have quit their employment or have been fired from being able to collect general assistance, even though they may have qualified for such assistance. To that extent, the Department's interpretation of the term "exhaust" does "encourage ... self-dependency and the desire to be ... useful to society".

However, the claimants have shown, and we concur, that the Department's interpretation also deprives those who are not "unworthy". It is undisputed that claimant, Sandra Fisher, had 62 months of employment over the previous eight years. Prior to applying for general assistance, however, Ms. Fisher was employed under a training program and such income did not qualify the claimant for unemployment compensation.

There is no basis on which Ms. Fisher can be classified as a person "unworthy" of general assistance. By working for 62 months out of the last eight years, she has demonstrated her "self-dependency and the desire to be a good citizen and useful to society". We are guided by principles of statutory construction which presume that the Legislature did not intend a result that is "absurd ... or unreasonable". 1 Pa.C.S. § 1922(1).

It is well settled that a court has no power to insert a word into a statutory provision when the Legislature has failed to supply it. *Worley v. Augustine,* 310 Pa.Superior Ct. 178, 456 A.2d 558 (1983); *In Re: Township of Upper Chichester,* 52 Pa. Commonwealth Ct. 121, 415 A.2d 1250 (1980). The Department argues strongly that the Courts should not presume that the Legislature intended that which it declined to say; however, the Department actually maintains that by use of the term "exhausted", the Legislature meant "received and exhausted". If that is what the Legislature intended it is certainly familiar with the verb "receive" and could easily have utilized it.

We find that the Legislature did not intend that an applicant for general assistance, pursuant to Section 432(3)(i)(H) of the Code, qualify for unemployment benefits as a prerequisite to entitlement for general assistance. The applicant need only exhaust such benefits should they be available.

82 Pa.Cmwlth. 116, 475 A.2d at 874–76. (footnotes omitted).

In rejecting this interpretation, the plurality erroneously states that the "problem with Commonwelath Court's interpretation is that they are *reading words into* the Public Welfare Act rather than accepting the plain meaning of the statute." At 620. The plurality then ignores its own admonition against "reading words into" the Public Welfare Code in holding that "we must conclude that the Legislature intended 'exhaust' to mean the Appellees must have *qualified for and received* unemployment benefits *and depleted* their entitlement to same ...." At 170–171. I cannot agree that the "plain meaning" of the word "exhausted" is "qualified for and received and depleted"-merely ascribing a meaning to a word and labelling that meaning as the "plain" one does not necessarily make it so. It is the plurality that "reads words into" the Code, *not* the Commonwealth Court.[1]

My principal quarrel with the plurality is not, however, one of semantics, for reasonable men and women may differ as to their interpretations of various words and phrases and may also differ as to the means they use to arrive at their interpretations. My major disagreement with the plurality is of a more fundamental and philosophical nature as it concerns the plurality's misguided decision to construe the Public Welfare Code *strictly* in favor of *denial or restriction of benefits* to claimants. ("we read our statute and the legislative history behind it to impose stricter standards for claimants to receive benefits under the Act ..." At 171). While the plurality may well be correct that the "flavor" of the Welfare Reform Act of 1982 is to "tighten the reigns of spending", *see Price v. Cohen,* 715 F.2d 87 (3d Cir.1983), that "flavor" does not obliterate the underlying objectives and goals of the Public

---

1. The plurality also suggests that the interpretation of "exhausted" by the Commonwealth Court has violated the "supreme principle of statutory interpretation [that] each word used by the Legislature has meaning and was used for a reason, not as mere surplusage." At 169. However, the plurality does not elaborate further on this perceived violation of this "supreme principle" and, in fact, takes off in the other direction in reasoning that the Commonwealth Court has "read words into" the Act.

Welfare Code which are set forth in section 401, 62 P.S. § 401, as follows:

**Legislative intent**

It is hereby declared to be the legislative intent to promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed; that assistance shall be administered promptly and humanely with due regard for the preservation of family life, and without discrimination on account of race, religion or political affiliation; and that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society.

This statement of legislative intent was not altered by the Welfare Reform Act of 1982,[2] and firmly establishes that the Public Welfare Code is humanitarian and remedial in nature—as such, the courts are *required* to construe its provisions liberally *in favor of coverage.* Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928, Rule of strict and liberal construction;[3] *Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 437 A.2d 1213 (1981); *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981) (liberal construction of Workmen's Compensation Act). The "strict construction" approach advocated today by the plurality is diametrically opposed to the objectives and goals of the Public Welfare Code. The legislature may have intended to "tighten the reigns of spending" by the Welfare Reform Act, but the plurality's interpretation "tightens the reigns" with such force that the original purpose and objective of the Public Welfare Code is ignored and frustrated.

**2.** This section has been modified by § 13(b) of Act 1978, June 20, P.L. 477, No. 70 creating the Department of Aging, repealing section 401 insofar as the section is inconsistent with said Act.

**3.** As the public assistance provisions of the Public Welfare Code are not among the enumerated categories of provisions to be strictly construed, 1 Pa.C.S.A. § 1928(b)(1)–(8), the legislature requires these provisions to be "liberally construed to effect their objects and to promote justice." 1 Pa.C.S.A. § 1928(c).