## McNelly Appeal

*James J. Byrne Jr.*, for petitioner Vidilia McDuffy.

*Melvin A. Schwarz*, for petitioner H. Theresa Edge.

*Leo A. Hackett*, solicitor for Chester Upland School District.

*Arthur Levy*, for administration, Chester Upland School District.

REED JR., *J.*, October 29, 1987—This matter came before the court on the petition of non-professional employees of Chester Upland School District. The district had held several hearings in 1985 pursuant to the Public School Code to determine whether or not petitioners were in violation of the district's residency policy. As a result of those hearings, petitioners' employment with the district was terminated for violating the residency policy. Petitioners filed timely appeals from the district's decision to this court in accordance with local agency laws.

The issues presented to the trial court for consideration were:

(1) Whether or not the district's residency policy contravenes 24 P.S. §11-1106.

(2) Whether or not 24 P.S. §11-1106 violates the equal protection and due process clauses of the federal and state constitutions.

(3) Whether or not the district should be precluded from enforcing its residency policy by virtue of the application of the doctrine of laches and equitable estoppel.

This court, by order dated June 4, 1987, answered (1) in the affirmative, (2) in the negative and (3) in the affirmative. From these orders, the district has appealed to the Commonwealth Court. Hence, this opinion.

The facts relevant for consideration are that the district is a school district in Pennsylvania designated as a school district of the second class as defined in 24 P.S. §II-202. In April 1976, the district adopt-

ed a residency policy which required all non-professional employees to reside within the district. In June 1976, the district amended its policy and provided that all non-professional employees who were residents of the district must remain residents of the district as a condition of continued employment.

The district's residency policy provides:

"Be, and it is hereby resolved, that all non-professional personnel hired, effective this date, be and remain residents of the Chester Upland School District; and

"Further resolved, that this policy shall apply in all circumstances when there are no qualified applicants residing within the district." (School Board Meeting, April 26, 1976).

"Resolved, that the resolution on residency requirements for non-professional employees of the Chester Upland School District, adopted April 26, 1976, be amended to read as follows:

"That all present non-professional employees of the Chester Upland School District who are residents of the Chester Upland School District shall remain residents of said Chester Upland School District as a condition of continued employment with the Chester Upland School District; and

"Further resolved, that all new non-professional employees hired after April 26, 1976, be residents of the Chester Upland School District and remain residents of the Chester Upland School District as a condition of continued employment with the Chester Upland School District; and

"Further resolved, that this policy shall apply to the hiring of ALL non-professional employees, except when there are no qualified applicants for non-professional employee positions who reside within

the Chester Upland School District." (School Board Meeting, June 28, 1976).

In 1981, the state Legislature amended section 1106 of the Public School Code to prohibit school districts, other than those of the first class and first class A (i.e. Allegheny and Philadelphia County School Districts) from requiring any employee to reside within the particular district as a condition for appointment or continued employment. Section 1106 of the Pennsylvania School Code provides in part:

"Section 1106. Duty to Employ

"The board of school directors in every school district shall employ the necessary qualified professional employees, substitutes and temporary professional employees to keep the public schools open in their respective districts in compliance with the provisions of this act. Except for school districts of the first class and first class A which may require residency requirements, *no other school district shall require an employee to reside within the school district as a condition for appointment or continued employment.* (emphasis supplied).

"Section 3.

"A residency requirement authorized for school districts of the first class or first class A, pursuant to section 1106, shall not apply to any person who is an employee of such school district on the date of enactment of this amendatory act.

"Section 4.

"This act shall take effect immediately.

"Approved the 24th day of June A.D. 1981."

The district, in spite of the amendment, proceeded to enforce the residency requirement and thus terminated various non-professional employees for failing to continue to reside within its district.

The district, in support of its position, maintains first, that its residency policy does not violate section 11-1106 in that the statute prohibits residency requirements for professional employees only; and secondly, that section 11-1106 violates the equal protection and due process clause of both the federal and state constitutions, as there is no rational basis for limiting the residency requirements to only first class and first class A school districts.

The district contends that the statute applies only to professional employees, whereas the district's policy applies only to non-professional employees. This court disagrees with this position.

The district, as defined, is a second class district under 24 P.S. §2-202 and accordingly the statute prohibits residency requirements for districts of this size.

The district initially argues that the prohibition of the residency requirement is exclusively for professional employees, which is defined by the General Assembly under 24 P.S. §11-1101(1) as:

"The term 'professional employee' shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries, the selection of whom is on the basis of merit as determined by eligibility lists and school nurses."

We find that the General Assembly used the term "employee" in section 1106 as it relates to residency and not professional employees.

If the General Assembly had intended to designate professional employee only, it would have clearly so stated in the statute; instead section 1106 of the code says "no other district shall require an

'employee' to reside within . . . the district. . . ." "Employee" thus must be interpreted in accordance with that unqualified language. We have no power to insert a word into a statutory provision when the Legislature has failed to supply it. See, *Fischer v. Commonwealth, Department of Public Welfare*, 82 Pa. Commw. 116, 475 A.2d 873 (1984).

In support of our findings, we note that the legislative history behind the amendment sets forth in both the Senate Debate, Bill 187 on May 27, 1981 and June 1, 1981; and the House Debate, Bill 187 on June 16, 1981, this interpretation and intention.

It is clear to us that the Legislature meant the term "employees" to embrace all school district employees, not just professional employees. We cannot find any limiting language, as the Chester Upland School District suggests.

The second issue for consideration is whether or not section 11-1106 violates the equal protection and due process clause of the federal and state constitutions by applying to first class and first class A school districts only.

The Pennsylvania Constitution in Article 3 §20 states:

"Classification of municipalities

"The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this constitution."

The above constitutional provision permitted the state to enact 24 P.S. §2-202, dealing with classification of school districts, which is as follows:

"The several school districts of the commonwealth are hereby divided into five classes, as follows:

"Each school district having a population of 1,500,000, or more, shall be a school district of the first class;

"Each school district having a population of 350,000, or more, but of less than 1,500,000, shall be a school district of the first class A;

"Each school district having a population of 30,000, or more, but of less than 350,000, shall be a school district of the second class;

"Each school district having a population of 5,000, or more, but of less than 30,000, shall be a school district of the third class;

"Each school district having a population of less than 5,000 shall be a school district of the fourth class." As amended, August 8, 1963 P.L. 564, §1; December 9, 1980 P.L. 1123, §1, imd. effective; December 10, 1980 P.L. 1314, §1, effective in 60 days.

At the outset, it is the burden of the district to establish that 24 P.S. §11-1106 is unconstitutional as it applies to the Chester Upland School District. However, we note that our appellate courts have held that statutes enjoy a presumption in favor of constitutionality and as such, the district has the substantial burden of proving otherwise. See, *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932 (1978).

Accordingly, it was the district's burden, which it has failed to meet, to establish that there is no real distinction in the classification. See, *Freezer Storage Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 718 (1978), wherein the Pennsylvania Supreme Court stated:

"Legislation for a class distinguished from a general subject is not special, but general; and classifi-

cation is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be a sound basis. The test is not wisdom, but good faith in the classification."

The record amply demonstrates that the Legislature in enacting section 11-1106 acted in good faith and that there is a real distinction between first class and first class A school districts. First and most obvious, is the sheer population involved. Secondly, there is a benefit for the larger districts to keep their salaried employees within the district to help the tax base and overall employment. Thirdly, we are dealing with districts between major metropolitan cities, i.e. Philadelphia and Pittsburgh, and the city of Chester where the population falls far below those cities. There are real distinctions and real problems that first class and first class A school districts have to deal with, and which Chester Upland School District does not.

Not only do we find no violation of the Pennsylvania Constitution, we find there to be no violation of the 14th Amendment to the United States Constitution. Again, Pennsylvania is not forbidden from making classifications or distinctions, so long as they are reasonable, not arbitrary and resting upon grounds of differences having a fair and substantial relationship to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. See *Moyer v. Phillips,* 462 Pa. 395, 397, 341 A.2d 441, 443 (1975).

The equal protection clause does not stand for the absolute proposition that the commonwealth may

not classify individuals for different treatment. *U.S. ex. rel. Souder v. Watson,* 413 F.Supp. 711 (1976).

Moreover, the Legislature can impose greater burdens on one class of citizens which in and of itself does not violate the equal protection clause. See, *Murphy v. Harleysville Mutual Ins. Co.,* 282 Pa. Super. 244, 422 A.2d 1097.

To that end, we find that the classification between school districts of first class and first class A and all other classifications of school districts is a legitimate one and is rationally related to a legitimate governmental interest.

Finally, under the facts set forth, the doctrine of laches and equitable estoppel does act to preclude the district from enforcing its residency policy. However, since the district cannot have a residency policy, this argument is of no weight.

Furthermore, if we assume that 24 P.S. §11-1106 does not apply to "employees," then we must find that the district's delay in enforcing the residency requirement is precluded by both laches and equitable estoppel. See *Board of Education v. Philadelphia Federal,* 40 Pa. Commw. 490, 397 A.2d 1273 (1979).

Under the circumstances both laches and equitable estoppel arise due to the nine-year delay on the part of the district in enforcing its residency requirements. This delay in enforcement allowed petitioners to rely upon the fact that the district would not enforce residency requirements against "employees" and thus permitted each to act in a fashion which the district now holds to be detrimental to their employability.

For this court to sanction the district's nonfeasance would act only to justify a course of conduct on the district's part which is improper.

For the reasons set forth herein, this court has granted the relief requested by petitioners and reinstated them in their jobs with back pay and all benefits from July 1, 1986, through the date of our order.