IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Mirande,                          :
                           Petitioner     :
            v.                            :    No.  1141 C.D. 2021
                                          :    Submitted:  August 19, 2022
Unemployment Compensation                 :
Board of Review,                          :
                           Respondent     :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED: November 16, 2022


        Michael Mirande petitions for review of the September 22, 2021 order of the

Unemployment Compensation Board of Review (Board) that affirmed the decision

of the referee and found Claimant ineligible for unemployment compensation (UC)

benefits.  The referee concluded Claimant was not able to work and available for

suitable work under Section 401(d)(1) of the Unemployment Compensation Law.[1]

After careful review, we affirm.

## I. Background and Procedural History

        Claimant took a leave of absence from his employment with Your Wireless

Management LLC (Employer) in March 2020 and applied for UC benefits in April

2020.  The Erie UC Service Center issued a notice of determination on December

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

11, 2020, indicating Claimant was ineligible for UC benefits for the weeks ending March 28, 2020, through November 28, 2020. The notice explained that Claimant did not establish he was available for suitable work under Section 401(d)(1) because his "reason for not being available for work is he will not put his loved ones at risk during the [COVID-19] pandemic." Certified Record (C.R.), Item No. 2, Notice of Determination, 12/11/20, at 1.

Claimant appealed to a UC referee, who held a telephone hearing on March 4, 2021. Claimant participated *pro se*, while Employer presented the testimony of Human Resources Manager Kitty Pasricha (Pasricha). Claimant testified he worked about 20 hours per week for Employer from August 2016 until March 2020, when he took an approved leave of absence. C.R., Item No. 6, Notes of Testimony (N.T.), 3/4/21, at 5-6. Employer operated a store that sold cellphones, among other things, and Claimant worked as a sales associate. *Id.* at 5-8. Claimant testified he became concerned Employer was not doing enough to protect against the spread of COVID-19 in the store. *Id.* at 7. Claimant specifically alleged a lack of personal protective equipment and safety protocols. *Id.* at 7-8. According to Claimant, "I informed my [d]istrict [m]anager that until the situation became fixed, that I would be taking a leave of absence."[2] *Id.* at 8.

Claimant testified he took the leave of absence not so much because he feared contracting COVID-19 personally, but because he was engaged in rotations as a full-

---

[2] Claimant's testimony indicates Employer's store was able to remain open following Governor Wolf's disaster declaration and order directing closure of "non-life sustaining businesses." C.R., Item No. 6, N.T., 3/4/21, at 8; *see generally Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020).

time pharmacy student.[3]  *Id.* at 7-10.  Further, Claimant testified he and his girlfriend "started up a charity" in April 2020, which raised money to purchase meals from local businesses and "deliver those meals to hospitals and the nursing homes which were the hot spots of COVID."  *Id.* at 9-10.  Although Claimant earned no income from this charity, he described it as a "pretty big full-time job" in which he invested "probably about like 30, 35 hours per week . . . ."  *Id.* at 10.  He insisted Employer's store "was not a safe environment to be in.  And it wouldn't protect anybody in the community, nor it have [*sic*] protected any of the patrons I would be running into."  *Id.* at 9.

Claimant testified Employer contacted him via his district manager in April 2020 and asked whether he "would be interested in staying on payroll at 75%."  *Id.*  Because Claimant had already filed for UC benefits, however, the district manager informed him that he did not qualify.[4]  *Id.*  Claimant nonetheless asserted he "made it clear even in my original leave of absence that I would still be willing to come into work, and I have been able to work . . . ."  *Id.*  When the referee asked Claimant how he would have been able to work given his status as a full-time student and his time spent volunteering, Claimant replied:

---

[3] Claimant alleged in his petition for appeal from the Service Center's notice of determination that his clinical rotations exposed him to "many immune-compromised patients[.]"  C.R., Item No. 3, Petition for Appeal, 12/26/20, at 4.

[4] While Claimant describes this as an offer to "return to work . . . at 75% salary," Claimant's Br. at 8 (citation omitted), text messages included in the supplemental record demonstrate the district manager told Claimant he "won't be coming to work[.]  It's a payroll program[.]"  Suppl. R., Claimant's Ex. A.  The Board submits, Board's Br. at 10 n.6, that the district manager's proposal was likely related to the Paycheck Protection Program, enacted as a part of the Coronavirus Aid, Relief, and Economic Security Act, *see* 15 U.S.C. § 636(a)(36).

Well, I mean I would have been able to work, because we would have eventually I guess had to dial back the charity work or find other volunteers to help. But I would -- would be willing to work.

. . . .

If it was offered, I would -- I would have came [sic] back. But I was never reached out [sic] at any point, other than those messages in April.

*Id.* at 10.

Pasricha testified concerning Employer's COVID-19 safety protocols as they existed around the time Claimant took his leave of absence. These included things like placing "shields" on every desk in the store, having only one customer enter the store at a time, and providing personal protective equipment. *Id.* at 10-11. When Claimant insisted that the store where he worked did not have shields on every desk, Pasricha candidly acknowledged that she did not see the shields herself, "but that is the information that was given to us, by our management, that every single store has sent been [sic] this." *Id.* at 12.

The referee issued a decision on March 10, 2021, which affirmed the Service Center's determination and denied Claimant's appeal. Like the Service Center, the referee relied on Section 401(d)(1). The referee explained Claimant was not able to work and available for suitable work because he "was not realistically attached to the job market as a full[-]time student and doing the business of setting up a charity and then working for said charity hours which are sufficient to constitute a full[-]time job, per his testimony." C.R., Item No. 7, Referee's Decision, 3/10/21, at 2.

Claimant retained counsel and appealed to the Board, which issued an order on September 22, 2021. The Board affirmed the referee, adopting and incorporating her findings and conclusions.[5] Claimant filed a petition for review in this Court and

---

[5] The Board's Chairman noted his dissent.

4

now primarily challenges the finding that he was not able to work and available for suitable work under Section 401(d)(1).

## II. Discussion

This Court reviews orders granting or denying UC benefits for violations of a petitioner's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* The Board is the ultimate factfinder in these cases and entitled to assess witness credibility and weight of the evidence. *Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1185 n.2 (Pa. Cmwlth. 2021) (citing *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)). Accordingly, we view the evidence in a light most favorable to the party that prevailed before the Board, granting it the benefit of all logical and reasonable inferences. *Sweeney v. Unemployment Comp. Bd. of Rev.*, 74 A.3d 1175, 1177 n.1 (Pa. Cmwlth. 2013) (citing *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)). If substantial evidence supports the Board's findings, they are binding on appeal. *Allen v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1128, 1133 (Pa. Cmwlth. 2018) (citing *Kelly v. Unemployment Comp. Bd. of Rev.*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001)).

In his brief, Claimant challenges the finding that he was not able to work and available for suitable work because he was a full-time student. Claimant's Br. at 12. Claimant argues he was a full-time student while working for Employer previously and cites case law explaining that status as a full-time student does not automatically disqualify a claimant from receiving UC benefits. *Id.* at 13-15, 24 (citing *Scardina v. Unemployment Comp. Bd. of Rev.*, 537 A.2d 388 (Pa. Cmwlth. 1988)). Claimant further challenges the finding that he was not able to work and available for suitable

5

work due to his volunteer activity. He relies on his testimony before the referee that he would have been willing to "dial back" his volunteering to accept employment. *Id.* at 16 (citing C.R., Item No. 6, N.T., 3/4/21, at 10). Claimant suggests the referee viewed him as "self-employed" and attempts to refute this characterization.[6] *Id.* at 17-18.

Section 401(d)(1) provides that a claimant will qualify for UC benefits if, in relevant part, he or she "[i]s able to work and available for suitable work . . . ." 43 P.S. § 801(d)(1). Although a claimant bears the burden of proving availability for suitable work, an unemployed worker who registers for UC benefits is presumed to be available under Section 401(d)(1). *Rohde v. Unemployment Comp. Bd. of Rev.*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011) (citing *Koba v. Unemployment Comp. Bd. of Rev.*, 370 A.2d 815 (Pa. Cmwlth. 1977); *Penn Hills Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 437 A.2d 1213 (Pa. 1981)). This presumption is rebuttable with evidence that a claimant's physical condition limits the type of work he or she can perform, or that a claimant voluntarily placed restrictions on the type of work he or she is willing to accept. *Id.* (citing *Molnar v. Unemployment Comp. Bd. of Rev.*, 397 A.2d 869 (Pa. Cmwlth. 1979)). If evidence rebuts the presumption of availability, the burden shifts to the claimant to establish that he or she was able to do some type of work*,* and that there was a reasonable opportunity for securing work. *Id.* (citing *Molnar*, 397 A.2d 869). The ultimate issue is whether conditions on the claimant's employment would "so limit his availability as to effectively remove him from the labor market." *Id.* (quoting *Harwood v. Unemployment Comp. Bd. of Rev.*, 531 A.2d 823, 826 (Pa. Cmwlth. 1987)). Stated differently, the issue is whether the conditions

---

[6] Claimant also contends he had a necessitous and compelling reason for leaving employment with Employer. We need not address this issue as we conclude that Claimant is ineligible due to his unavailability for work.

"would give a search for employment an unreasonably low possibility of success." *Kuzma v. Unemployment Comp. Bd. of Rev.*, 523 A.2d 830, 833 (Pa. Cmwlth. 1987) (citing *Goodwin v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 1308 (Pa. Cmwlth. 1977)) (footnote omitted).

Applying these principles here, Claimant registered for UC benefits and was presumed to be able to work and available for suitable work.[7] *Rohde*, 28 A.3d at 243 (citing *Penn Hills Sch. Dist.*, 437 A.2d 1213). Claimant placed restrictions on the type of work that he was willing to accept, however, by being a full-time student and engaging in extensive volunteer activity. *Id.* (citing *Molnar*, 397 A.2d 869). The burden therefore shifted to Claimant, who failed to testify that there was any type of work he was able to do or that he had a reasonable opportunity to secure work with these restrictions. *See id.* (citing *Molnar*, 397 A.2d 869).

Claimant is correct that being a student by itself did not disqualify him from receiving UC benefits. *Scardina*, 537 A.2d at 390. As this Court has explained, "a claimant who is ready, willing and able to engage in some substantial employment may be eligible for some benefits even though he limits his availability to part-time work." *Id.* (citing *Kuzma*, 523 A.2d 830). The problem with Claimant's argument is that he was also engaging in extensive volunteer activity while he was a student. Claimant described his volunteering as a "pretty big full-time job" on which he spent "probably about like 30, 35 hours per week . . . ."[8] C.R., Item No. 6, N.T., 3/4/21,

---

[7] Notably, "a person on a leave of absence from his job is not presumed to be unavailable for work. A person on a leave of absence from one job may be able and available for other work." *St. John v. Unemployment Comp. Bd. of Rev.*, 529 A.2d 1218, 1220 (Pa. Cmwlth. 1987) (citing *Pa. Elec. Co. v. Unemployment Comp. Bd. of Rev.*, 450 A.2d 779 (Pa. Cmwlth. 1982)).

[8] Claimant explained this time commitment as follows: "[I]n the beginning it was soliciting people for donations, setting up social media, contacting State Reps . . . . And that includes with the deliveries, setting up phone calls, setting up meetings." C.R., Item No. 6, N.T., 3/4/21, at 10.

7

at 10. Once again, this Court must view the evidence in the light most favorable to Employer as the party that prevailed before the Board, granting it the benefit of all logical and reasonable inferences. *Sweeney*, 74 A.3d at 1177 n.1 (citing *Taylor*, 378 A.2d at 831). It is reasonable to infer that Claimant's restrictions of being a student and volunteering, when viewed collectively, would render him unavailable for work under Section 401(d)(1).

Claimant's only contrary testimony was his assertion that he would have been willing to "dial back" his volunteering to accept employment. C.R., Item No. 6, N.T., 3/4/21, at 10. The Board is the ultimate finder of fact in these matters, *Hubbard*, 252 A.3d at 1185 n.2 (citing *Peak*, 501 A.2d 1383), and the availability of a claimant under Section 401(d)(1) is generally a question of fact that lies with the Board. *Penn Hills Sch. Dist.*, 437 A.2d at 1214-15; *see also Hower & Son v. Unemployment Comp. Bd. of Rev.*, 509 A.2d 1383, 1386 (Pa. Cmwlth. 1986) ("Whether one is able and available for suitable work is a question of fact unless the restriction on job availability is so untenable and illustrative of a lack of good faith as to be disqualifying as a matter of law[.]") (citation omitted). As the factfinder, the Board was free to reject Claimant's testimony as lacking credibility. *Ellis v. Unemployment Comp. Bd. of Rev.*, 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013) (quoting *Wideman v. Unemployment Comp. Bd. of Rev.*, 505 A.2d 364, 368 (Pa. Cmwlth. 1986)).

## III. Conclusion

Accordingly, viewing the evidence in the light most favorable to Employer as the prevailing party, *Sweeney*, 74 A.3d at 1177 n.1 (citing *Taylor*, 378 A.2d at 831), we conclude substantial evidence supports the Board's decision that Claimant was not able to work and available for suitable work under Section 401(d)(1), and we

affirm the Board's September 22, 2021 order, which affirmed the referee's decision deeming Claimant ineligible for UC benefits.


_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Mirande,                        :
                    Petitioner          :
        v.                              :   No.  1141 C.D. 2021
                                        :
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :

# O R D E R

AND NOW, this 16th day of November 2022, the September 22, 2021 order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____
STACY WALLACE, Judge