437 A.2d 1213

## PENN HILLS SCHOOL DISTRICT

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW.

### Appeal of Catherine A. BARATTA.

Supreme Court of Pennsylvania.

Argued Oct. 27, 1981.

Decided Dec. 17, 1981.

Elliott A. Strokoff and Jerome H. Gerber, Harrisburg, for appellant.

John M. Tighe, Pittsburgh, for Penn Hills Sch. Dist.

Richard Wagner, Harrisburg, for Unemp. Comp. Bd.

Harold I. Goodman, Philadelphia, for amicus: Phila. Unemployment Project.

Michael I. Levin and William Fearen, Harrisburg, for amicus: Pa. Sch. Board Assoc.

Louis B. Kushner and Stephen H. Jordan, Pittsburgh, for amicus: Pgh. Fed. of Teachers.

Richard H. Markowitz and Robert C. Cohen, Philadelphia, for amicus: Fed. of Tel. Workers.

## OPINION

LARSEN, Justice.

Catherine Baratta, appellant, was employed as a school bus driver by the Penn Hills School District, appellee, during the 1977–78 scholastic year. In January, 1978, severe weather conditions (snow) forced repeated school cancellations. Due to the school closings, appellant missed seven non-consecutive days of work in January. (School was cancelled, and work was missed on January 9–11, 18, 20 and 26–27, 1978).

Appellant filed a claim for unemployment compensation benefits for those "snow" days, which claim was granted on February 4, 1978 by the Bureau of Employment Security. Referee Thomas W. Snyder affirmed the grant of benefits on March 24, 1978 following hearings on appellant's claim and the claims of many other similarly situated school district employees. The Unemployment Compensation Board of Review (the Board), in turn, affirmed the referee's decision on July 28, 1978.

A three-judge panel of the Commonwealth Court reversed the order of the Board on February 15, 1980. 410 A.2d 1320 (1980). Re-argument was allowed and, by opinion and order of February 3, 1981, the full seven members of the Commonwealth Court *en banc* unanimously upheld the panel's decision. 56 Pa.Cmwlth. 291, 425 A.2d 30 (1981).

Appellant petitioned this Court for allowance of appeal which we granted on July 17, 1981. Leave was granted to many interested organizations throughout the state to participate in the appeal as amici curiae.[1] We now reverse the Commonwealth Court.

1. Participating in this appeal as friends of the court are the Philadelphia Unemployment Project, the United Steelworkers of America, the Pennsylvania Chamber of Commerce, the Federation of Telephone Workers of Pennsylvania, the Eastern Pennsylvania Region of the International Ladies' Garment Workers' Union, the Pennsylvania Federation of Teachers, the Pennsylvania AFL–CIO, the Pennsylvania School Boards Association, and Richard Wagner, Esq. (former Chief Counsel for the Unemployment Compensation Review Board).

Section 401 of the Unemployment Compensation Law (the Act), 43 P.S. § 801 (supp. 1981–82), provides in relevant part: "Compensation shall be payable to any employe who is or becomes unemployed, and who—(d)(1) Is able to work and available for suitable work. . . ." Claimant's ability to work during the periods in question is not in dispute, nor is it disputed that she was partially unemployed during those periods. (Section 4(u) of the Act, 43 P.S. § 753(u), provides that "[a]n individual shall be deemed unemployed . . . (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.")

What is in dispute is claimant's "availability" for work on the "snow" days for which she filed claim. The Commonwealth Court, despite findings of availability by the bureau, the referee, and the Board, held in essence that, *as a matter of law*, claimant was not available.[2] Although it recognized that a finding of availability is normally a question of fact lying within the Board's "decision process", the Commonwealth Court was nevertheless persuaded that claimant was unavailable because of the brevity of her unemployment (claimant "was available only as long as the snowstorm caused the school closing, but at best no more than three consecutive days.") and her intent to return to work with appellee school district as soon as school resumed ("In fact, [claimant] not only intended and expected to, but actually did, return to work for the same employer after the inclement weather had passed, and is thereby rendered ineligible for benefits."). 425 A.2d at 32. In so ruling, the Commonwealth Court has created a disqualification from benefits which ignores the plain language and manifest intent of the Act as well as long-standing precedent of all of the appellate courts of this Commonwealth (including its own).

**2.** The Commonwealth Court stated "[s]ince the question of claimant's availability for work was resolved by the fact finder, we can only overturn the Board's decision for mistakes of fact, errors of law, or findings which are unsupported by substantial evidence." 425 A.2d at 31 (citation omitted). The court did not contend that the Board mistook a fact or that a finding was unsupported.

We begin with section 3, 43 P.S. § 752, which declares the public policy behind the legislation. That section provides:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes *during periods when they become unemployed through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own. (emphasis added).

As this Court has observed, section 3 "is not merely a perfunctory preface, but is, rather, the keystone upon which the individual sections of the Act must be interpreted and construed." *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 476, 211 A.2d 463, 466 (1965). The objective of the Act, as declared in section 3, is to insure that employees who become unemployed involuntarily are provided some semblance of economic security, *id.,* 418 Pa. at 477, 211 A.2d at 466, or, as more recently expressed "to aid those individuals who, through no fault of their own, face the grim prospect of unemployment." *Richards v. Unemployment Compensation Board of Review (UCBR),* 491 Pa. 162, 169, 420 A.2d 391, 395

(1980); *All Steel, Inc. v. UCBR*, 49 Pa.Cmwth. 552, 411 A.2d 884, 885 (1980).

Mindful of this remedial, humanitarian objective, the courts have always interpreted the benefits sections liberally and broadly to alleviate the distress of the involuntarily unemployed. *See, e.g., Pittsburgh Pipe & Coupling Co. v. UCBR*, 401 Pa. 501, 165 A.2d 374, 377 (1960) relying upon the landmark case in the unemployment compensation field, *Sturdevant v. UCBR*, 158 Pa.Super. 548, 45 A.2d 898 (1946) (opinion by Judge Reno; this case is sometimes cited as *Bliley Electric Co. v. UCBR*). Accordingly, a cardinal principle of construction has developed—an unemployed worker can be denied benefits only by *explicit* language in the Act which clearly and plainly excludes that worker from its coverage. *E.g., Sturdevant v. UCBR, supra*, 158 Pa.Super. 548, 45 A.2d at 904.

■■■ In determining whether a disqualification is appropriate, "the test is not whether the claimant has taken himself out of the scope of the Act but whether *the Act specifically excludes him from its provisions. This is what is meant by a liberal and broad construction."* Pittsburgh Pipe & Coupling Co. v. UCBR, supra, 401 Pa. at 509, 165 A.2d 378 (emphasis added); *Richards v. UCBR, supra* at 491 Pa. 168, 420 A.2d 391. Moreover, there exists a *presumption* that an unemployed worker who registers for unemployment is eligible for benefits. *Sturdevant v. UCBR, supra*, 158 Pa.Super. at 559–60, at 45 A.2d 905. "[O]rdinarily it will be presumed that a claimant who registers is able and available for work. By registering, the claimant makes out a prima facie case of availability, which is of course rebuttable by countervailing evidence...." *Id.; Colteryahn Dairy, Inc. v. UCBR*, 46 Pa.Cmwlth. 319, 407 A.2d 71, 73 (1979). Absent such evidence demonstrating that the claimant is specifically disqualified by some explicit section of the Act, the unemployed claimant is eligible for benefits. Further, this result obtains whether the unemployment be of a permanent or temporary nature. *Myers v. UCBR*, 17 Pa.Cmwth. 281, 330 A.2d 886, 888 (1975); *Shay*

*Unemployment Compensation Case*, 177 Pa.Super. 294, 111 A.2d 174 (1955).[3]

In the instant proceeding, it is apparent that the claimant does not fall within any specific disqualification provision of the Act. It is equally apparent that the Act contains no *general* disqualification based upon the brevity of the unemployment provision nor the employee's intent to return to work for the same employer; rather, the Commonwealth Court has *interpreted* section 401(d) availability as creating a disqualification based upon those two factors. This is judicial legislation which we cannot permit.

There are many specific disqualifiers in the Act. Thus, section 4(u) provides that an employee who is unemployed due to a plant shutdown for vacation purposes who receives funds from the employer as vacation allowance is ineligible. 43 P.S. § 753(u). Section 402 explicitly lists several other situations wherein a worker is disqualified from receiving benefits such as where the employee voluntarily leaves work without cause of a necessitous and compelling nature, 43 P.S. § 802(b), or where the unemployment is due to discharge or temporary suspension for willful misconduct, 43 P.S. § 802(e).

In *these* situations, and others, the General Assembly has clearly and unambiguously expressed its intention to preclude the workers within the exclusions from receiving unemployment compensation benefits. There is every reason to believe that, had the legislature wished to exclude workers unemployed for a brief lay-off who intended to return to work with the same employer, it would have done so. This negative implication becomes compelling in considering the 1977 amendments to the Act.

3. Originally, the Act spoke in terms of compensation for "total unemployment" but, with the removal of the word "total" in 1945 and the redefinition of "unemployed" in section 4(u) in 1951 to include weeks of less than full-time work, it has been unquestioned that temporary unemployment is compensable. *Susquehanna Collieries Division, the M.A. Hannah Co. v. UCBR*, 404 Pa. 527, 531–33, 172 A.2d 807, 809–10 (1961).

In that year, the General Assembly enacted a provision dealing *specifically* with teachers and other employees of educational institutions.[4] The Act was amended to provide that teachers and other school employees who are not working during regularly scheduled between-term breaks, vacations and holiday periods, and who have a contract or reasonable assurance of returning to work for an educational institution at the end of such period, shall be disqualified from receiving unemployment benefits for that period. 43 P.S. § 802.1 (supp. pamphlet 1981–82).[5]

**4.** The 1977 amendments essentially codified the line of "school employee" cases that had developed a body of precedent in the Commonwealth Court. *See, e.g. Calvano v. UCBR*, 29 Pa.Cmwth. 79, 368 A.2d 1367 (1977) *and Chickey v. UCBR*, 16 Pa.Cmwth. 485, 332 A.2d 853 (1975). We express no opinion on the propriety of the Commonwealth Court's creating a "school employees" exclusion in the absence of legislation since the 1977 legislation has rendered that question moot.

**5.** This section provides, in relevant part:

Benefits based on service for educational institutions pursuant to Article X, XI or XII shall as hereinafter provided be payable in the same amount, on the same terms and subject to the same conditions as outlined in section 404(g); except that:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

(2) With respect to services performed after December 31, 1977, in any other capacity for an educational institution (other than an institution of higher education as defined in section 4(m.2)), benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms.

(3) With respect to any services described in clause (1) or (2), benefits payable on the basis of such services shall be denied to any individual for any week which commences during an estab-

As the General Assembly saw fit to disqualify school employees from receiving benefits during summer and other term breaks and during holiday recesses (where the employee is reasonably assured of resuming employment in a learning institution), the resounding negative implication is that it did *not* intend to disqualify school employees in the instant situation, i.e. a sudden, unscheduled school closing due to inclement weather. Since it did not expressly exclude such unemployed workers from coverage, the requisite liberal and broad construction in favor of the distressed[6] worker mandates rejection of the Commonwealth Court's judicial creation of a "short period/intent to return" disqualification.

Many other provisions of the Act strengthen this conclusion. Section 4(u), 43 P.S. § 753(u), specifically provides for partial benefits for less than full-time work; section 4(m.3) defines the "partial benefit credit", 43 P.S. § 753(m.3); *see also* section 404(d), 43 P.S. § 804(d). Most persuasive is section 401(b) which provides that the secretary of the department of labor may by regulation waive or alter the requirements of registration and regular reporting at a local employment office "as to individuals *attached to regular*

lished and customary vacation period or holiday recess if such individual performed such services in the period immediately before such vacation period or holiday recess, and there is a reasonable assurance that such individual will perform such services in the period immediately following such vacation period or holiday recess.

6. The brief submitted by the Pennsylvania Chamber of Commerce rather cavalierly suggests that a person unemployed for such a brief period of time and expecting to return to work for the same employer is not really distressed and therefore not in need of unemployment compensation because such person is in little danger of "immediate poverty", brief at 7, and is "merely inconvenienced." Brief at 8. Perhaps the members of the chamber of commerce and the writers of the brief have been fortunate enough to have been spared the anxiety and distress of living from day to day with the disastrous consequences that even a relatively minor disruption to the flow of income can produce. They should not allow their good fortune, however, to blind them to the needs of those less fortunate. Indeed, in the instant matter, appellant lost seven days of work—and seven days of income—in one month. To some, perhaps, this might be a "mere inconvenience"; to others, however, it might mean a week's groceries or a month's heat.

*jobs* and as to such other types of cases or situations with respect to which he finds that compliance with such requirements would be oppressive or would be inconsistent with the purposes of the act. . . . " 43 P.S. § 801(b). Pursuant to this section, the secretary has waived the registration for work requirement if the claimant files for a week of partial unemployment. 34 Pa.Code Labor and Industry, § 65.-13(b)(9). Certainly, therefore, the legislature intended unemployment compensation coverage for the short-term unemployed worker who remains "attached to regular jobs." [7]

The General Assembly *could* have established a general disqualification based upon the length of the lay-off or the employee's assurance of returning to work—it did not and the courts *cannot*. To permit such a disqualification to stand would be to erect an irrebuttable presumption that the short-term unemployed expecting to return to work with the same employer are never available for suitable work. Given the existence of many types of short-term temporary employment, especially in a large metropolitan area (Penn Hills is in Allegheny County), and the fact that many of these short-term unemployed workers would gladly take such temporary employment to tide them over, such a presumption is totally unwarranted factually, even if it were permissible under the Act. Accordingly, the Commonwealth Court's disqualification of appellant based upon its misperception of section 401(d) availability cannot stand. As always, the question of availability must be decided on a case-by-case basis. *See, e.g., Susquehanna Collieries Division, the M.A. Hannah Co. v. UCBR, supra; Tokar v. UCBR,* 35 Pa.Cmwth. 241, 385 A.2d 634, 635 (1978); *Pinto v. UCBR,* 168 Pa.Super. 540, 79 A.2d 802 (1951).[8]

7. The legislature has imposed an additional requirement of a waiting week effective July 10, 1980. P.L. 521, no. 108 § 11, 43 P.S. § 801(e)(1) (supp. pamphlet). This provision reinstates the former waiting week requirement which was not, however, in effect at times relevant to the unemployment claim filed herein.

8. It is somewhat surprising that the Commonwealth Court used both the *Tokar* and the *Pinto* cases to reach its decision. These decisions

 If the Board's finding of availability is supported by substantial evidence, it is binding on the appellate courts. *Taylor v. UCBR*, 474 Pa. 351, 355, 378 A.2d 829 (1977). The duty of the appellate court is to examine the testimony in the light most favorable to the party in whose favor the fact-finder has ruled, giving that party the benefit of all logical and reasonable inferences from the testimony, to see if substantial evidence exists to support the ruling. *Id; see Fitterling v. UCBR*, 41 Pa. Commonwealth 113, 398 A.2d 744 (1979). Viewed in this light, the finding of appellant's availability by the Board must be upheld as she was presumptively available and eligible for benefits and as nothing appears on the record that might counter that presumption.

For the foregoing reasons, we reverse the order of Commonwealth Court and reinstate the award of unemployment compensation benefits by the Unemployment Compensation Board of Review.

WILKINSON, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurred in the result.

both reveal a case-by-case approach to availability and a deference to the Board's findings of availability.