**[J-84-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| PETER A. PRECHT, | : | No. 85 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 710 CD |
| | : | 2021 dated December 18, 2023, |
| v. | : | Affirming the Decision of the |
| | : | Unemployment Compensation |
| | : | Board of Review at Nos. B-21-09-D |
| UNEMPLOYMENT COMPENSATION | : | 2527 and B-625800 dated May 27, |
| BOARD OF REVIEW, | : | 2021 |
| | : | |
| Appellee | : | ARGUED:  November 18, 2025 |

**OPINION**

**JUSTICE BROBSON**                                          **DECIDED:  April 30, 2026**

In this discretionary appeal, we consider the continued applicability of the judicially created "positive steps" test to determine whether an individual's activities related to a stand-alone business enterprise constitute self-employment under the Unemployment Compensation Law (Law).[1]  After careful consideration, we hold that the positive steps test is untenable where, as here, it permits the disqualification of an unemployment compensation claimant for benefits in contravention of the plain language of Section 4(*l*)(2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B).  As the Commonwealth Court concluded otherwise, we reverse.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

## I. LEGAL BACKGROUND

In 1936, the General Assembly enacted the Law "to aid those individuals who, through no fault of their own, face the grim prospect of unemployment." *Richards v. Unemployment Comp. Bd. of Rev.*, 420 A.2d 391, 395 (Pa. 1980). "Mindful of this remedial, humanitarian objective, the courts have always interpreted the [Unemployment Compensation (UC)] benefits sections liberally and broadly to alleviate the distress of the involuntarily unemployed." *Penn Hills Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 437 A.2d 1213, 1215 (Pa. 1981). From this, "a cardinal principle of construction has developed—an unemployed worker can be denied benefits only by explicit language in the [Law] which clearly and plainly excludes that worker from its coverage." *Id.* (citing *Bliley Elec. Co. v. Unemployment Comp. Bd. of Rev.*, 45 A.2d 898, 904 (Pa. Super. 1946)).

In 1959, the General Assembly amended the Law to exclude from its coverage claimants "engaged in self-employment."[2] *See* Section 402(h) of the Law, 43 P.S. § 802(h). The Law, however, does not define "self-employment," and courts have struggled to determine whether a claimant's services render him/her ineligible for UC

---

[2] Section 402(h) of the Law provides:

> An employe shall be ineligible for compensation for any week . . . [i]n which he is engaged in self-employment: Provided, however, [t]hat an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. § 802(h).

benefits. Against this backdrop, the Commonwealth Court laid the foundation for what would become known as the positive steps test.[3] *See generally Leary v. Unemployment Comp. Bd. of Rev.*, 322 A.2d 749, 750 (Pa. Cmwlth. 1974) (holding that claimant became self-employed on date he made "a positive but not final act in the establishment of an independent business enterprise"). This test, which was derived from analogous Superior Court case law, requires only a single positive act, such as incorporating or advertising, to render a claimant "self-employed" and, therefore, ineligible for benefits under the Law. *Precht*, 306 A.3d at 1003.

This Court recently considered the propriety of the positive steps test in *Lowman v. Unemployment Compensation Board of Review*, 235 A.3d 278 (Pa. 2020). Therein, Daniel Lowman (Lowman) was separated from his employment and, as a result, filed for UC benefits. During the UC proceedings, Lowman reported earnings from his ridesharing services offered through Uber. The Duquesne UC Service Center found that Lowman's services rendered him self-employed and, therefore, ineligible for benefits. A referee and the UC Board of Review (Board) affirmed based upon their application of Section 4(*l*)(2)(B) of the Law. The Commonwealth Court, however, reversed based upon its application of the positive steps test. Applying that test, the Commonwealth Court concluded that Lowman was not self-employed. On appeal, this Court affirmed, albeit on different grounds. As the positive steps test pertains to a finding of self-employment, we first sought to define the term or the appropriate test to determine its applicability. We began by identifying that "[t]he entire scheme of the [Law] is designed around concepts of 'employee,' 'employment' and by extension, employers." *Lowman*, 235 A.3d at 297. "[I]f an individual is not found to be in 'employment,' he is not an 'employe' covered by the

---

[3] President Judge Cohn Jubelirer provides a detailed history of the positive steps test in her dissenting opinion below. *Precht v. Unemployment Comp. Bd. of Rev.*, 306 A.3d 994, 1007-10 (Pa. Cmwlth. 2023) (Cohn Jubelirer, P.J., dissenting).

[Law]." *Id.* at 297-98; *see* Section 4(i), (j), (*l*) of the Law, 43 P.S. §§ 753(i), (j), (*l*) (defining "employe," "employer," and "employment").

Turning then to the definition of "employment," we noted that Section 4(*l*)(2)(B) of the Law provides, in relevant part:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). In interpreting this provision, we held that it "contains a presumption of employment" where an individual performs services for wages, which presumption remains until it is proven "that the individual in question is not subject to control and is customarily engaged in an independently established trade, occupation, profession or business."[4] *Lowman*, 235 A.3d at 300. In other words, we concluded that, where a claimant performs services for wages, Section 4(*l*)(2)(B) "requires a structured two-factor analysis" of those services to determine whether an individual is engaged in self-employment. *Id.* at 298. Accordingly, we held that Section 4(*l*)(2)(B) "provides the test for determining whether an individual is 'engaged in self-employment' as that term is used in Section [402](h)" of the Law—at least as it relates to services performed within a work relationship with a third party, like Lowman's services performed through his relationship with Uber. *Id.* at 298 & n.24; *see also Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009) ("[D]ecisions are to be read against their facts[.]"). "We express[ed] no opinion on the use of a 'positive steps' analysis . . . where the . . . services are performed by an individual in a stand-alone context." *Lowman*, 235 A.3d at 298 n.24.

---

[4] Courts have referred to these subpart considerations of Section 4(*l*)(2)(B) of the Law as the "control" and "independence" factors.

## II. PRESENT MATTER

Unlike *Lowman*, the present matter pertains to an individual's actions related to a stand-alone business enterprise.[5]  On August 6, 2020, Claimant separated from his employment with Walman Optical.  The following day, Claimant created an optical consultation business, for which he designed and created a website and spent approximately $2,983.00 on advertising.  Claimant prepared an Internal Revenue Service Form 1040 Schedule C for the 2020 tax year (Schedule C), which indicated that the business suffered a net loss of $11,473.00.  Claimant, however, had not yet performed any services for, nor received any earnings from, his business.

On December 6, 2020, Claimant applied for UC benefits.  Upon review, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits because his creation of a new business rendered him self-employed.  Claimant appealed that determination, and, after holding a hearing, a referee affirmed.  Claimant appealed the referee's decision to the Board, which adopted the referee's findings of fact, made additional findings of fact, and affirmed the referee's decision.  Both the referee and the Board based their decisions on their respective findings that Claimant took positive steps to establish an independent business and was, therefore, customarily engaged in that business.  Neither the referee nor the Board made any factual findings about whether Claimant had actually performed any services through his optical consultation business, but the Board did opine that Claimant "ha[d] not yet received any earnings from his business." (Board Op. at 1.)

---

[5] The facts in this matter are undisputed.  While the Board initially took the position that Peter A. Precht (Claimant) was self-employed and, therefore, ineligible for benefits, it has since abandoned that position.  In its brief before this Court, the Board agrees with Claimant that this Court should abrogate the positive steps test and reverse the Commonwealth Court's order.  (*See* Board's Br. at 6-7.)

Claimant appealed the Board's decision to the Commonwealth Court, raising a challenge to the continued viability of the positive steps test. Claimant argued that, consistent with this Court's decision in *Lowman*, courts "should evaluate self-employment *purely* under the two-part test found in Section 4(*l*)(2)(B) of the Law." *Precht*, 306 A.3d at 1001 (emphasis in original). The Commonwealth Court disagreed and affirmed the denial of benefits in a divided, *en banc* opinion. The Commonwealth Court first determined that the positive steps test remained viable in the stand-alone context because this Court expressly limited its holding in *Lowman* to those circumstances involving a relationship with a third party and "express[ed] no opinion on the use of a 'positive steps' analysis as a part of the test for self-employment embodied in Section [4](*l*)(2)(B)" as applied to a stand-alone business enterprise. *Id.* (alterations in original) (emphasis omitted) (quoting *Collins v. Unemployment Comp. Bd. of Rev.*, 281 A.3d 364, 371 (Pa. Cmwlth. 2022)). In support of its application of the positive steps test, the Commonwealth Court reiterated that the purpose of the Law is "to compensate those who are unemployed through no fault of their own" and not to serve as "insurance for individual business undertakings." *Id.* at 999 (emphasis omitted) (quoting *Buchanan v. Unemployment Comp. Bd. of Rev.*, 581 A.2d 1005, 1008 (Pa. Cmwlth. 1990)). The Commonwealth Court relied predominantly upon its precedent regarding self-employment in the stand-alone context, providing:

> If one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business, trade, profession, or occupation, he becomes a self-employed businessman. If subsequently his business fails or proves to be unprofitable[,] he does not have the option of falling back upon [UC] benefits because the Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. The Law is clearly not insurance for individual business undertakings.

*Id.* (alterations in original) (emphasis omitted) (quoting *Buchanan*, 581 A.2d at 1008). Based upon this reasoning, the Commonwealth Court concluded that the positive steps test remained applicable to circumstances involving a stand-alone business enterprise.

For similar policy-based reasons, the Commonwealth Court also rejected Claimant's argument that that he could not be self-employed because "he never launched [his] business and never performed services in exchange for remuneration." *Id.* at 1002. The Commonwealth Court explained:

> [R]emuneration cannot be the test in a stand-alone context because otherwise an individual could receive UC benefits, notwithstanding the amount of time he spent operating his independent business and the positive steps he took in furthering his business, thereby, being qualified for UC benefits and self-employed at the same time.

*Id.* The Commonwealth Court opined that to hold otherwise would transform UC benefits into "an insurance policy for any individual establishing his own business." *Id.* at 1003 n.11.

Having found the positive steps test applicable to the present matter, the Commonwealth Court purportedly applied Section 4(*l*)(2)(B) of the Law while "focus[ing] on Claimant's stand-alone activities." *Id.* at 1002. Primarily, the Commonwealth Court's analysis revolved around the independence factor, *i.e.*, whether Claimant was customarily engaged in an independently established trade, occupation, profession, or business.[6] The Commonwealth Court determined that he was. *Id.* at 1005. Specifically, the Commonwealth Court noted that Claimant had incorporated his business with the

---

[6] As described above, Section 4(*l*)(2)(B) of the Law "requires a structured two-factor analysis" of those services to determine whether an individual is engaged in self-employment. *Lowman*, 235 A.3d at 298. Below, the Commonwealth Court concluded that the control factor "is not at issue in the stand-alone context" because there is no presumed employer that would be in control over the individual's performance of services. *Precht*, 306 A.3d at 1002. The parties do not dispute this aspect of the Commonwealth Court's decision. (*See* Claimant's Br. at 18 n.8; *see also id.* at 30 n.18; Board's Br. at 9 n.2.)

Pennsylvania Department of State; applied for and received an employer identification number; designed and created a website; and spent money on advertising, legal and professional services, office expenses, supplies, deductible meals, wages for other employees, and other expenses. *Id.* at 1003. As a result of these positive steps towards establishing his business, the Commonwealth Court determined that Claimant was self-employed under Section 4(*l*)(2)(B) and, therefore, ineligible for UC benefits.

President Judge Cohn Jubelirer authored a dissenting opinion, which Judge McCullough joined. According to the dissent, the positive steps test is no longer necessary because "[t]he plain language of the Law's two-part self-employment test provides all we need, even in the stand-alone context, to determine whether a given claimant is self-employed."[7] *Id.* at 1014 (Cohn Jubelirer, P.J., dissenting). Relying upon the text of, *inter alia*, Section 4(*l*)(2)(B) of the Law, the dissent posited that the "key to employment" is the "performance of services for remuneration or wages." *Id.* at 1007 (emphasis omitted); *see also id.* (citing Section 4(i) of the Law, 43 P.S. § 753(i) (defining "[e]mploye" as individual who "has performed services"); Section 4(*l*) of the Law, 43 P.S. § 753(*l*) (defining "[e]mployment" as "all personal service performed for remuneration by an individual")).

In accordance with that definition, the dissent opined that the first question "in determining whether a claimant is self-employed is whether the claimant performed *services* for *wages*[;] . . . if the answer is no, [the court or UC authority] must conclude that the claimant is not self-employed." *Id.* (emphasis in original). The dissent further explained:

_____

[7] Along the same lines, the dissent opined that considering positive steps "does not enhance [the] analysis" of whether someone is self-employed "in any meaningful way." *Precht*, 306 A.3d at 1012 n.7 (Cohn Jubelirer, P.J., dissenting); *see also id.* at 1013 (quoting *Lowman*, 235 A.3d at 298 n.23 ("The concept of referring to activities as 'positive steps' adds nothing to the analysis.")).

Subsections (a) and (b) confirm that understanding, as they both situate their requirements by referring to "such services," a cross-reference to those "services performed by an individual for wages." 43 P.S. § 753(*l*)(2)(B). Clearly, then, subpart (a), the "control factor," and subpart (b), the "independence factor," *Lowman*, 235 A.3d at 283, both depend on the existence of "services performed . . . for wages." 43 P.S. § 753(*l*)(2)(B). Thus, reading the text with that cross-reference in mind, the control factor requires a claimant to have been free from control over the performance of the claimant's *services performed for wages*, and the independence factor, relevant here, requires that with respect to the claimant's services performed for wages, the claimant must be customarily engaged in an independently established business.

*Id.* (alteration in original) (emphasis in original).

In further support, the dissent expressed that the positive steps test runs contrary to "the long-standing policy-driven interpretive rules [that courts and UC authorities] must apply in the UC context," which dictate that "disqualification provisions should be narrowly construed, and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions." *Id.* at 1013 (emphasis omitted) (quoting *Harmon v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 292, 307 (Pa. 2019)). In the dissent's view, the plain language of Section 4(*l*)(2)(B) of the Law does not support the disqualifications permitted by the positive steps test—including that of Claimant. Instead, the dissent maintained that the record in this matter is devoid of any evidence that Claimant performed any services, let alone services for wages. For this reason, along with Claimant's assertion that he was ready and available to work, the dissent concluded that Claimant is eligible for UC benefits.

### III. CONTINUED VIABILITY OF POSITIVE STEPS TEST

This Court granted discretionary review to consider the continued viability of the positive steps test in the context of a stand-alone business enterprise.[8] As he did below,

---

[8] More specifically, this Court granted review to consider the following issues, as stated by Claimant:

(continued…)

Claimant argues that the Commonwealth Court's use of the positive steps test conflicts with the letter and spirit of Section 4(*l*)(2)(B) of the Law and this Court's decision in *Lowman*. In considering this claim regarding the interpretation of Section 4(*l*)(2)(B), we are guided by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa. C.S. § 1921(b)). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)).

To reiterate, Section 4(*l*)(2)(B) of the Law provides, in pertinent part:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will

---

(1) Does the Commonwealth Court's judicially created "positive steps" test remain viable after this Court definitively established the test for "self-employment" in the [UC] program in *Lowman* . . .?

(2) Does continued use of the "positive steps" test, which disqualifies a claimant for any activity [he/she] undertake[s] to begin establishing a business, conflict with the plain language of Section 4(*l*)(2)(B) [of the . . . Law . . . , 43 P.S. § 753(*l*)(2)(B),] which requires a finding that the claimant was "customarily *engaged* in an independently *established* business" (emphasis added)?

(3) Does the Commonwealth Court's interpretation of Section 402(h) [of the Law, 43 P.S. § 802(h),] run counter to the remedial intent behind the . . . Law when it leads to the disqualification of an individual who explores an entrepreneurial opportunity while [he/she] remain[s] able and available for work and continue[s] to engage in work search activities?

*Precht v. Unemployment Comp. Bd. of Rev.*, 328 A.3d 996-97 (per curiam) (some alterations in original).

continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). Although this statutory provision is primarily referred to as setting forth a two-part test, there are three subparts to be considered: the preface, the control factor, and the independence factor. Below, the Commonwealth Court concluded that the control factor was not at issue and that "Claimant ha[d] satisfied the independence factor . . . by taking positive steps in establishing an independent business." *Precht*, 306 A.3d at 1005. Claimant argues, however, that the Commonwealth Court's application of the positive steps test conflicts with the preface of Section 4(*l*)(2)(B), as well as the terms "customarily engaged" and "established," as they appear in the independence factor.

As explained above, this Court recently construed Section 4(*l*)(2)(B) of the Law in *Lowman*. Therein, we rejected the applicability of the positive steps test to services performed "within the context of a work relationship with a third party." *Lowman*, 235 A.3d at 298. In so doing, this Court characterized the test as "focus[ing] on a claimant's stand-alone activities," rather than services being performed for a third party. *Id.* In other words, we concluded that the considerations involved in the positive steps test would be more relevant to a Section 4(*l*)(2)(B) analysis regarding services performed for a stand-alone business enterprise. It does not necessarily follow, however, that the test is applicable in all such instances. Indeed, in making the distinction between the two contexts, this Court opined that the positive steps test "adds nothing to the analysis of the actual services performed by a claimant." *Id.* at 298 n.23. Beyond the clear implication underlying this declaration, there exists a more concerning issue with the continued application of the positive steps test in any self-employment context: the test does not require the performance of services.

As this Court opined in *Lowman*, the preface of Section 4(*l*)(2)(B) of the Law contemplates an individual's performance of services for wages. By performing these services, Section 4(*l*)(2)(B) affords the individual a presumption of employment. To establish that a claimant is engaged in self-employment and, therefore, ineligible for UC benefits, the challenging party must meet its burden of proving both the control and independence factors of Section 4(*l*)(2)(B). These factors, in turn, consider the extent of control or direction the individual has over the performance of the services and whether, "as to such services[, the] individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. § 753(*l*)(2)(B). Based upon these parameters, which reference the "services" identified in the preface, it is plain that self-employment under Section 4(*l*)(2)(B) requires the actual performance of services.

Below, Claimant addressed this plain language, arguing that he was not self-employed because "he never launched the business and never performed services in exchange for remuneration." *Precht*, 306 A.3d at 1002. The dissent acknowledged this point and agreed with Claimant that "there are no Board findings, nor is there evidence of record, that Claimant performed any services for clients, let alone services for which he received wages." *Id.* at 1015 (Cohn Jubelirer, P.J., dissenting) (emphasis omitted). Accordingly, the dissent opined that "Claimant did not achieve or actually engage in said self-employment," based upon the plain requirements of Section 4(*l*)(2)(B) of the Law. *Id.* (emphasis omitted). The Commonwealth Court, however, did not directly address the requirement that services be performed. Rather, the Commonwealth Court implicitly rejected Claimant's interpretation and focused, instead, on whether Section 4(*l*)(2)(B) requires that the services be performed *for wages*.

The Commonwealth Court opined that, without the positive steps test, a claimant could remain eligible for UC benefits "as long as [his] business runs at a loss, . . . thereby making UC an insurance policy for any individual establishing his own business." *Id.* at 1003 n.11 (majority opinion). Finding this possibility inconsistent with the purported spirit of the Law, the Commonwealth Court concluded that "remuneration cannot be the test in a stand-alone context." *Id.* at 1002. Viability of this conclusion aside, we note that, applied here, the positive steps test presupposes that Claimant has performed the prerequisite services—despite Claimant's repeated assertion that he has not and the complete lack of evidence establishing any such performance of services. The Commonwealth Court's position also improperly conflates the concept of a service being performed for wages with the "launch" or profitability of the business enterprise. For example, the Commonwealth Court rejected Claimant's assertion that he never "launched" the business because of evidence that he had sustained a loss in his efforts towards establishing that business. *Id.* at 1004 ("It is difficult to fathom how an individual can declare that he sustained an $11,473.00 loss by expending such a significant sum of money on a business he merely conceived, yet never launched."). In rejecting Claimant's argument that he had yet to perform services, the Commonwealth Court similarly remarked that "[t]here is . . . no requirement under the positive steps test that the business be successful or profitable." *Id.* at 1003. In effect, in reaching its determination, the Commonwealth Court relied solely upon evidence demonstrating Claimant's efforts towards *establishing* an independent business enterprise and his *intention* to perform services at some point in the future. *See id.* at 1003-04. This inclination, while consistent with the Commonwealth Court's precedent and its application of the positive steps test, fundamentally conflicts with the plain language of Section 4(*l*)(B)(2) of the Law and, therefore, cannot stand.

Section 4(*l*)(2)(B) of the Law plainly requires the performance of services for wages, and neither the control factor nor the independence factor can be proven without first proving the existence of "such services." 43 P.S. § 753(*l*)(2)(B). It is only after this prerequisite performance of services is proven that a court can evaluate the nature of the individual's performance. As this Court has explained:

> [A]n analysis using Section [4](*l*)(2)(B) does not evaluate what a claimant could do, but what he has done and/or is doing in terms of providing . . . services for remuneration. Looking at a claimant's real-time activities through the lens of Section [4](*l*)(2)(B) avoids speculation based on hypothetical considerations and aids in evaluating a claimant's actual status for eligibility purposes.

*Lowman*, 235 A.3d at 303. It is for this reason that we have held that the phrase "customarily engaged," as it appears in the independence factor, "mandates that an individual *actually* be involved in an independently established trade, occupation, profession, or business," rather than "having the mere ability to be so involved."[9] *A Special Touch v. Dep't of Lab. & Indus.*, 228 A.3d 489, 491 (Pa. 2020) (emphasis added).

That is not to say, however, that the positive steps taken by an individual in furtherance of a stand-alone business enterprise are irrelevant to the independence factor analysis. This Court has "made clear that *all* relevant factors presented in a given case should be considered when determining whether a business is independently established," including many circumstances that would qualify as a "positive step." *Lowman*, 235 A.3d at 302 (emphasis added) (citing *Danielle Viktor, Ltd. v. Dep't of Lab. & Indus.*, 892 A.2d 781, 797-98 (Pa. 2006)). For example, once the prerequisite performance of services has been proven, courts and UC authorities should consider

---

[9] Indeed, we have gone further to hold that even an occasional performance of services "is simply not enough to demonstrate that said individual is *customarily engaged* in an independently established trade, occupation, profession or business." *Lowman*, 235 A.3d at 301 (emphasis added) (quoting *Silver v. Unemployment Comp. Bd. of Rev.*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)).

whether the claimant has "acquired the traditional trappings of a business, *e.g.*, a license, a lease, an ownership interest in the assets of a trade or business, business cards, clients, advertising," and other relevant evidence. *Id.* at 302-03 (citing *Danielle Viktor, Ltd.,* 892 A.2d at 797-98). Each of these actions would qualify as a positive step, but they can only inform the self-employment determination, insofar as they relate to services actually performed for wages. Otherwise, they "add[] nothing to the analysis." *Id.* at 298 n.23.

## IV. ANALYSIS UNDER SECTION 4(*l*)(2)(B) OF THE LAW

With these principles in mind, we turn to the application of Section 4(*l*)(2)(B) of the Law to the present circumstances. Stated simply, there is no evidence of record demonstrating that Claimant has performed any services through his optical consultation business, let alone services for wages. To the contrary, the referee found that Claimant had merely "*planned* to set up a website where . . . clients . . . would pay [Claimant] a consultation fee." (Referee Findings of Fact No. 3 (emphasis added).) The referee further credited Claimant's admission that "his intention was, and will be, to make the business his primary source of income *once he gets the website up and running*." (Referee Op. at 2 (unpaginated) (emphasis added).) Similarly, the Board opined that Claimant's actions "forming and registering his legal entity and . . . spending money on advertising" proved that he was "customarily engaged," even though Claimant "ha[d] not yet received any earnings from his business." (Board Op. at 1.) The Board also credited Claimant's statements on the record "communicat[ing] his expectation that his business *will be* fully operational and profitable" at some point in the future. (*Id.* (emphasis added).)

Absent from each of these findings and aspirational statements by Claimant is proof that he had performed any services that could establish the test set forth in Section 4(*l*)(2)(B) of the Law. Instead, the findings support the conclusion that Claimant had merely "tak[en] positive steps in *establishing* an independent business." *Precht*,

306 A.3d at 1005 (emphasis added).  Taking steps *to establish* a business, however, is distinct and separate from an individual being "customarily engaged in an independently *established* . . . business."  43 P.S. § 753(*l*)(2)(B) (emphasis added).  The former captures "what a claimant *could* do," while the latter considers "what he *has done* and/or *is doing* in terms of providing personal services for remuneration."  *Lowman*, 235 A.3d at 303 (emphasis added).  As this Court explained in *Lowman*, Section 4(*l*)(2)(B) does not evaluate "speculation based on hypothetical considerations."  *Id.*  Rather, it focuses on "a claimant's real-time activities" related to the performance of services.  *Id.*

## V.  CONCLUSION

We hold that Section 4(*l*)(2)(B) of the Law provides the test for determining whether an individual's actions related to a stand-alone business enterprise render the individual self-employed as that term is used in Section 402(h) of the Law.  We further hold that the positive steps test contravenes the plain language of Section 4(*l*)(2)(B), insofar as it is applied to individuals that have not yet performed services for wages and those who are not yet "customarily engaged in an independently established trade, occupation, profession or business."  43 P.S. § 753(*l*)(2)(B).  As Claimant had not yet performed services for wages on behalf of his stand-alone business enterprise, his aspirational efforts towards that business could not establish his ineligibility for UC benefits.  Accordingly, we reverse the Commonwealth Court's order.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy and McCaffery join the opinion.